[No. 35401. Department Two. August 24, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. EVERETT H. BENSON, *Appellant*.*

*Reported in 364 P. (2d) 220.

*Keogan & Kinnie* (*LeRoy C. Kinnie,* of counsel), for appellant.

*John J. Lally, Frank H. Johnson,* and *Thomas S. Foley,* for respondent.

DONWORTH, J.—This is an appeal from a judgment and sentence based on verdicts of guilty of the crime of grand larceny on each of the five counts charged in the amended information. Each count charged appellant with a violation of RCW 9.54.010(2), which provides, in part, that:

"Every person who, with intent to deprive or defraud the owner thereof—

" . . .

"(2) Shall obtain from the owner or another the possession of or title to any property, real or personal . . . by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game . . .

"Steals such property and shall be guilty of larceny."

Appellant had been previously tried and convicted on these same five counts and he also had been tried on eight additional counts as to which he was acquitted. He was granted a new trial because a deputy clerk of court had gone into the jury room (while the jury was absent) in order to retrieve certain documents not in evidence which mistakenly had been given to the jury.

We are concerned here with the second trial on the five counts above mentioned. The complaining witnesses were two friends of appellant, namely, George Conner and Ralph

Tenhonen. Counts I, II, and III charged that appellant obtained from George Conner total cash payments of $1,050 by color and aid of certain false and fraudulent representations and pretenses hereinafter described. Counts IV and V charged that appellant obtained from Ralph Tenhonen two payments totalling $400 by the same means.

The state produced evidence (which the jury had a right to believe) which tended to prove that appellant obtained from the complaining witnesses the sums alleged in the five counts of the amended information, respectively, in the following manner:

In February, 1957, he represented to them that he had an agreement with the Niescho Company, a Japanese concern which had an office in San Francisco, by which that company undertook to advance $25,000 to enable appellant to explore certain extensive deposits of native copper in Alaska. Appellant offered the complaining witnesses a share of the profits if they would financially assist him in complying with the terms of this agreement.

The complaining witnesses paid to appellant the respective sums on the dates alleged in the amended information. Between February and May, 1957, they asked appellant to produce the agreement with Niescho. On May 1, 1957, appellant secretly consulted an attorney in the Spokane area and dictated a contract purporting to be between appellant and the complaining witnesses, jointly, and Niescho Company, Limited. (At the trial, appellant testified that this document was a forgery as to the purported signatures of the officers of Niescho—both in English and in Japanese.)

Without disclosing to the complaining witnesses that he had consulted the attorney (whom George Conner had known for over ten years), appellant, on May 10, 1957, presented this contract to them after it had purportedly already been signed by the officers of Niescho. Appellant and the complaining witnesses then all signed the instrument in the presence of each other.

This purported contract (which is set forth on four pages of the state's brief) is too lengthy to quote in full in

this opinion or even to give a resumé of its principal provisions. It contains a provision that if the reports resulting from the preliminary exploration (for which Niescho was to advance $25,000) are satisfactory to Niescho, the latter shall advance $150,000 more for further development of the copper properties. There is another provision by which Niescho limits its liability to purchase copper ore or concentrates in any six months' period to $3,000,000. There is also a reference to an existing contract between the parties relating to the purchase of iron ore.

The state produced one of the officers of Niescho, whose signature purported to be on the contract, and he testified that there never was such a contract, and that he had met appellant only once briefly, and that that meeting concerned another proposed sale of copper (not in Alaska). He also testified that the purported signatures of the corporate officers (both in English and in Japanese) were forgeries.

As stated above, appellant admitted on the witness stand that this purported contract was a fake, but his defense was that he believed it to be genuine at the time he made the representations to the complaining witnesses. The jury did not believe him. Therefore, our function is limited to an examination of appellant's thirteen assignments of error to determine whether any prejudicial error was committed by the trial court which would warrant our reversing his conviction.

Appellant first assigns error to the trial court's denial of his motion in arrest of judgment. He contends that there was no evidence in the record showing either that he knew of the falsity of the Japanese contract at the time of making the representations or that he had any intent to deprive the complaining witnesses of their money. He makes the further contention with respect to counts I and IV that there was a failure of proof that the complaining witnesses relied on or were deceived by his representations concerning the Japanese contract, because they each knew, on February 25 and on May 1, that there was then no contract with the Japanese company in existence.

With respect to these three assignments of error relating to the denial of appellant's motion for arrest of judgment, we have examined the testimony and exhibits showing appellant's course of conduct during the period from February to July, 1957, concerning the Japanese contract and his representations to the complaining witnesses regarding it. We find that there was sufficient evidence concerning the elements of the crimes charged (which appellant contends were lacking) to justify the trial court in submitting these issues to the jury and in denying appellant's motion in arrest of judgment.

Appellant's fourth assignment of error relates to the admission of a portion of the testimony of a stenographer employed by the prosecuting attorney. The stenographer was present in the prosecutor's office on the morning of the day after appellant's arrest when appellant, in reply to the prosecutor's questions, allegedly made certain very damaging admissions. She made shorthand notes of the prosecutor's interrogation of appellant, and then, upon the trial, in effect read a part of these shorthand notes to the jury. However, no written transcript of these notes was offered as an exhibit.

As stated in appellant's brief, his counsel objected to the admission of the stenographer's testimony (specifically to her reading from her shorthand notes) on the ground that:

" . . . since the notes themselves were not admissible, that to allow the witness to read them into the record would be allowing her to do indirectly that which she could not do directly . . . [and] that such notes were nothing more than memoranda of an oral conversation heard by the witness."

■ A distinction between *admissions* and *confessions* has long been recognized by this court. *State v. Turner, ante* p. 159, 361 P. (2d) 581 (1961), and *State v. Royce*, 38 Wash. 111, 80 Pac. 268 (1905). The testimony of the stenographer in this case did not concern a confession. The statements made by appellant, as read to the jury by the stenographer, did not constitute, nor did they even approximate, a complete acknowledgment of guilt with

respect to the offense charged. At most, his statements amounted to extrajudicial admissions involving a partial disclosure of the circumstances surrounding the commission of the alleged crime. This is not to say, however, that the statements were not extremely damaging to appellant's case. However, as was stated in the *Turner* case, we are not here dealing with a confession and, consequently, the statutory and constitutional restrictions upon the admissibility of confessions simply do not apply. Some other jurisdictions have adopted a different position. See Criminal Admissions in Evidence, Problems of Admissibility, 4 Kan. L. Rev. 108.

The stenographer's notes appear to us to fall into the category of past recollection recorded and are admissible on this ground. The prerequisites for the admission of past recollection recorded are as follows: (1) The witness has no independent recollection of the facts, (2) the writing itself does not bring back any distinct recollection of the circumstances, (3) the writing was prepared concurrently (or almost) with the facts which it purports to record, (4) that the witness knew that the memorandum was true when written, and (5) that the memorandum or writing was an accurate and complete record of what transpired. See Past Recollection Recorded (1957), Trial Lawyer's Guide 249. It appears from the statement of facts that all of these prerequisites were met, and we, therefore, hold that the trial court did not err in permitting the stenographer to read from these shorthand notes in testifying in this case.

In his next assignment, appellant asserts that the court erred in refusing to admit seven letters written to him by William E. Major, an import and export broker of San Francisco, who died prior to the time of the trial. They were offered solely to corroborate appellant's testimony that he had had negotiations with Mr. Major, and not to prove the contents of the letters. In our opinion, their admission or rejection was within the trial court's discretion, and no abuse of such discretion has been shown.

What we have just stated applies equally to the rejection of another letter offered in evidence by appellant which he received from E. W. Pringle of Ronan, Montana.

There is no merit in either assignment No. 5 or No. 6.

Assignment No. 7 involves two handwriting samples used by an expert witness who expressed the opinion that appellant did not forge the signatures on the Japanese contract. The state objected to having the entire contents of these documents go to the jury. Apparently, counsel for the parties later agreed that certain portions of these documents could be used by the witness as samples of appellant's handwriting instead of using them in their entirety. These portions were admitted in evidence without objection by appellant's counsel. We, therefore, cannot consider this assignment.

Appellant excepted to the following sentence in instruction No. 6, which was given by the court to define the elements of the crime for which he was being tried:

"(c) That such representation was false, the defendant Everett H. Benson, knowing the same to be false."

His assignment of error is based on the contention that two essential elements ((a) that the representation was false, and (b) that appellant then knew it was false) have been erroneously combined in the above-quoted sentence.

In this connection, appellant also excepted to the court's refusal to give his requested instruction No. 3, in which the substance of elements (a) and (b) above referred to were separately stated.

These two matters are referred to in assignments of error Nos. 8 and 10. Several decisions from other jurisdictions are cited by appellant in support of his argument regarding these assignments, but we do not find that they are in point. In our opinion, assignments Nos. 8 and 10 are without merit.

The correctness of the court's instruction No. 9 is challenged in assignment No. 9. This instruction related to admissions made by a defendant charged with a crime. The jury was told that such admissions, when not caused by duress or fear produced by threats, are to be considered by

the jury in connection with all other evidence in the case in determining the guilt or innocence of the accused.

Appellant's exception to instruction No. 9 was on the ground that the rule above referred to was applicable only to confessions and not to admissions, and, also, that it failed to warn the jury that such admissions should be considered by the jury with great caution. With regard to the distinction between a confession and an admission (see *State v. Turner, supra*), we do not see how this instruction could possibly have been prejudicial to appellant, even assuming *arguendo* that the language used is applicable only to a confession.

In *State v. Grenier*, 29 Wn. (2d) 772, 189 P. (2d) 477 (1948) (cited by appellant), it was held that where there was a dispute whether a confession had been made under inducement (not under duress or fear), the trial court erred in failing to give the necessary instruction regarding corroboration, as provided in RCW 10.58.030, when requested by the defendant's counsel. It was further held that it was discretionary whether the trial court should charge the jury that a confession "made under inducement" is to be received with great caution. In the present case, there was no testimony that appellant's admissions to the prosecuting attorney were made under inducement. We can find no prejudicial error regarding the giving of instruction No. 9 or the refusal to give appellant's requested instruction No. 9.

Appellant's last assignment of error brings us to a consideration of his motion for new trial which was denied by the trial court. Appellant states in his brief that this motion was based on "the highly prejudicial nature of the rebuttal evidence" introduced by the state. He asserts that the state "put in a 'skeleton' case for its case-in-chief," and then presented in rebuttal "its most powerful and effective witnesses" (the prosecuting attorney, a deputy prosecutor, the deputy sheriff who arrested appellant, and the stenographer previously referred to).

In this case, appellant had taken the stand and testified on direct examination that he had gotten the terms which

he embodied in the Japanese contract from two Japanese men whom he met at a hotel in Lewiston, Idaho, and who suggested that he submit a proposal on the Alaska copper exploration. He further testified that he forwarded the proposal by mail to these same men in Seattle and that it was returned to him with the purported signatures of the officers of Niescho Company on it. He stated in his testimony that he then believed it to be a genuine contract. He admitted making the answers in the prosecutor's office to which the stenographer testified when reading from her shorthand notes, but he said that they were not true and were made because he was getting tired and wanted to stop the interrogation. On cross-examination, he again testified to the same effect.

The state's position regarding its rebuttal evidence is that if it had not called these witnesses to refute appellant's testimony, his counsel would have argued to the jury that the state's failure to do so gave rise to the presumption that their testimony (if called) would have been favorable to the defense.

■ In any event, the matter of the admission or refusal to admit this rebuttal evidence was a decision for the trial court to make in the exercise of its discretion. *State v. Bailey,* 147 Wash. 411, 266 Pac. 163 (1928). In view of appellant's testimony regarding his interview with the prosecuting attorney on the morning of the day after his arrest and also his denial that he knew (at the respective times when he received money from the complaining witnesses) that the Japanese contract was a fake, we cannot find any abuse of discretion in the trial court's admission of the rebuttal testimony. Appellant's motion for new trial was properly denied.

We have considered all of appellant's assignments of error in the light of the record of his trial and are unable to find any reversible error.

The judgment and sentence are hereby affirmed.

FINLEY, C. J., WEAVER, OTT, and HUNTER, JJ., concur.