[No. 37517. Department One. October 28, 1965.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE
ALBYON HETTRICK, *Appellant.**

*Reported in 407 P.2d 150.

*Bill Lanning* and *Robert S. Egger*, for appellant.

*Charles O. Carroll* and *Richard M. Ishikawa*, for respondent.

KELLY, J.†—The appellant was convicted by a jury of the crime of manslaughter, after having been charged with first degree murder.

A factual background is necessary against which to consider the various alleged assignments of error. The original information charged the defendant with the crime of murder in the first degree in the following language:

> He, the said LAWRENCE ALBYON HETTRICK, in the County of King, State of Washington, on or about the 29th day of August, 1963, with a premeditated design to effect the death of *one Agnes Brueske,* a human being, willfully, unlawfully and feloniously then and there did shoot at, toward and into the body of the said Agnes Brueske, with a certain deadly weapon, to-wit: .380 Caliber Beretta Automatic, then and there held by the said LAWRENCE ALBYON HETTRICK, thereby mortally wounding the said AGNES BRUESKE, from which mortal wounds the said Agnes Brueske then and there died; . . . . (Italics ours.)

Toward the end of the state's case, the trial court granted respondent's oral motion to strike certain words from the charging portion of the information, treating the same as a motion to amend in accordance with the proof. This amendment struck the words "one Agnes Brueske" and in place, in the first part of the information, stated *"a human being,"* so that the charge then was "with the premeditated design to effect the death of a human being," instead of as originally alleged "the death of one Agnes Brueske." In all other respects the information as amended was the same as the original information.

Approximately 3 days prior to August 29, 1963, appellant

---

† Judge Kelly is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Hettrick was introduced to one Elizabeth Bertha Taylor. The purpose of the introduction was to negotiate the purchase of property by appellant from Taylor. The property in question consisted of a small house, a trailer and a shed. On that date, appellant and Taylor entered into an earnest money agreement for the purchase and sale of the property. This property was located at 8427 South 150th Street, Renton, King County, Washington. Prior to August 29, 1963, Alfred W. Brueske had put some furniture in the shed located on the real estate, and later promised to pay $5 a month rental for the shed to Taylor, the seller. Brueskes, however, never paid that amount, or any sum. The question concerning the furniture stored in the shed which belonged to Brueskes had, however, been discussed between Taylor and Hettrick during negotiations looking to the sale.

About 7 p.m., on August 29, 1963, the Brueskes, the Swensons (Brueskes' daughter and son-in-law) arrived in a truck and prepared to remove the furniture from the shed referred to. Shortly thereafter, the appellant also came on the scene.

Observing the Brueskes were loading their truck with things being taken from the shed, Hettrick asked Mrs. Ora Clark, who was occupying the trailer with her family, "Why the hell are they taking the furniture? That's my furniture, I just bought this place from Beth Taylor." He then approached the Brueske group where an argument ensued and thereafter went back to his car nearby and got a Beretta automatic from under the front seat on the driver's side. His friend, Dale Schaeffer, was sitting in the car. Whether the gun was then loaded does not clearly appear. It was loaded and in the car the day before, when he first showed it to Schaeffer. In any event, he put it in his back pocket after, as he testified, he put a clip in it. As he returned toward the Brueske clan, Mrs. Clark saw the butt of the gun protruding from his back pocket. The shot that later killed Mrs. Brueske came from this gun. Shortly thereafter, Mrs. Clark heard a shot and Hettrick say, "This is just a warning." After an interval of a few minutes, and several more shots, Kathy Swenson (Mrs. Brueske's daughter) cried out, "You have killed my mother." Other

witnesses testified substantially to the same facts. Five to seven shots were fired by Hettrick. He testified he fired two shots into the ground to warn them, then two into the air; that someone in the group ridiculed him as having only a cap gun. He then fired one into a refrigerator which was being loaded by the Brueskes on their truck. He did not recall firing again, but undoubtedly did, as the witnesses testified. It was this last shot which apparently killed Mrs. Brueske.

Appellant contended he was acting in self defense as "they were ganging up on me." Shortly after Mrs. Brueske was shot, someone called for an ambulance which arrived soon thereafter, along with several officers from the Renton Police Department. Appellant met the first arrivals with a flashlight and directed them about the premises. During their investigation at the scene, at least three witnesses heard statements by Hettrick, such as, "Yes, I shot her." "I guess my bluff got out of hand, and they got after me with a club and a man has a right to protect his property."

The state called Thomas A. Carter, Administrator of the Professional Division of Department of Licenses, Olympia. He testified that, on the date of the shooting, the appellant did not have a license to carry a gun as required by law. RCW 9.41 et seq.

During the trial and while Alfred Brueske, the surviving spouse of the woman killed in the affray, was testifying, he was asked to draw according to scale a replica indicating the position of the truck onto which the refrigerator was being loaded at the time of the shooting. The following occurred. By Mr. Ishikawa (the deputy prosecutor):

Q. Can you draw two red lines? Is that about the width of the truck? A. Yes. Q. Is that what you are designating as the width of the truck? Actually, isn't it a little wider? . . . MR. LANNING: [appellant's counsel] I object to counsel coaching the witness and leading the witness and move his last question be stricken and the answer stricken and the jury instructed to disregard it. THE COURT: It will be denied. It is quite obvious that the two lines together are not to scale. MR. LANNING: It might be obvious, but I would like a ruling on the motion. THE

COURT: I have ruled. MR. LANNING: At this time, I respectfully move for a mistrial. THE COURT: It will be denied. MR. LANNING: May I give the court my reasons after recess? THE COURT: Yes.

After recess, the following transpired.

THE COURT: You wanted to argue a motion for a mistrial? MR. LANNING: I didn't want to argue. I just want to state my reasons. I base the motion on the position that I feel the Court's remarks constituted a comment on the evidence. . . . THE COURT: Let me make a short statement for the record. One witness called attention to the fact that this map or sketch, Exhibit 1, is a bit misleading in that in the upper right hand corner is placed a blown up drawing of what purports to be down in the lower left hand side, and unless a witness is advised pretty fully regarding that, he is going to be led into making an obvious mistake, especially if anyone is attempting to draw anything to scale.

Regarding the particular comment I made, I called attention to the fact that in the upper right hand corner are two parallel lines that run just about one-sixteenth of an inch apart, which he had drawn to indicate the car and which obviously was not according to the scale and I felt his attention should be called to it, and as a result, you can see the larger red rectangle now that more probably marks the place in accordance with the scale. MR. LANNING: Thank you your Honor.

The trial of this case started on the 18th of November, 1963, before the Honorable William J. Wilkins, Judge of the Superior Court of King County, sitting with the jury.

At the time the trial commenced, the following consent was executed by the parties concerned:

Lawrence Albyon Hettrick, Defendant, and Bill Lanning, Attorney for the Defendant, in the above entitled action do hereby consent that the Jury impaneled and trying this cause may separate during this trial and until the conclusion of the arguments in said cause at each adjournment of court.

Done in open court without the hearing or presence of the Jury, this 18 day of Nov. 1963.

[signed] Lawrence A. Hettrick
 Defendant
[signed] Bill Lanning
 Attorney for Defendant

Approved
[signed] Richard M. Ishikawa
[signed] Richard W. Pierson
 Attorneys for State of Wash.

During the trial and on Friday, November 22, 1963, John F. Kennedy, the President of the United States, was assassinated in Dallas, Texas. This information reached the court personally while the jury was still listening to the testimony. Out of the presence of the jury, counsel and the court had several conferences as to how the news should be given to them and how the jury should be handled thereafter. When the jury was again in the box and after hearing further testimony, and the parties having rested, the court made the following announcement to the jury:

I have some rather distressing news to tell you. Apparently President Kennedy was shot while in Dallas, Texas and is dead, and also the Governor of Texas.

I would have liked to be able to keep this from you in view of our situation, but I am quite sure you would have learned of it in some way, but I do want to caution you that you should not in any way let this sad news affect your judgment in this case at all, and I do want to caution you on that.

You may now retire to the jury room.

Thereafter, the jury was excused until Tuesday morning, at which time the court made the following statement for the record in the absence of the jury:

I think I should say for the record that in this case it will show that we suspended at twelve noon on Friday last. This is now Tuesday morning, the 26th, and at that time, we were concerned with whether we could keep the jury together.

After the reporter was excused, we decided that in view of the fact that the other courts in the building were closing Friday afternoon, it would be better to let the jurors continue to remain separated and to let them

go home until either yesterday morning, depending on whether the funeral of the President would be yesterday, in which case it would go over until this morning.

I think that is a correct statement of the facts.

MR. LANNING: That is correct to my recollection.

Thereafter, the court having indicated the instructions he was prepared to give to the jury, counsel for the parties respectively, took their exceptions thereto. The jury was then instructed on the law of the case, listened to the argument of counsel and received the case for the purpose of deliberating upon its verdict.

In his brief, the appellant lists six assignments of error relied upon in his request for a new trial. (1) The court erred in allowing the state to introduce testimony given by Thomas A. Carter into evidence. (2) The court erred in giving instruction No. 19 regarding concealed weapons. (3) The court erred in commenting on the evidence. (4) The court erred in permitting the state to orally amend the information at the close of the state's case. (5) The court erred in allowing testimony or oral statements made by the defendant to police officers without the safeguards of pretrial procedure. (6) The court erred in advising the jury of President Kennedy's assassination and in allowing them to separate thereafter until the following Tuesday.

Inasmuch as appellant relies on the same reasons and authorities in his arguments in support of his assignments of error (1) and (2), we will also consider them together. It is true that the court permitted the testimony of the witness Thomas A. Carter to be taken out of order. On this point, the discretion of the trial judge was applicable and in it we find no abuse. The two assigned errors pose, first of all, a question of fact as to whether or not the appellant was guilty of carrying "a concealed weapon."

Appellant's exception to instruction No. 19, relative to possession of a weapon, is in the following language:

First, that portion which reads, "concealed on or about his person" is not applicable in this case in light of the evidence herein adduced, in that the testimony and the only testimony regarding the gun was that it was in full view and was not concealed.

 Assignments of error (1) and (2)˙ are, therefore, without merit. Allowing the witness Carter to testify somewhat out of order as to the fact that the appellant had no gun-carrying permit was within the discretion of the court and we find no abuse of discretion in the ruling made. *State v. Rush,* 14 Wn.2d 138, 127 P.2d 411 (1942); *State v. Anderson,* 132 Wash. 130, 231 Pac. 456 (1924); *State v. Wilmot,* 95 Wash. 326, 163 Pac. 742 (1917). The appellant admitted he had no permit or license since June 24, 1960. Whether as a matter of fact the appellant was carrying a weapon concealed on his person was for the jury to determine. *Hainey v. State,* 147 Ala. 146, 41 So. 968 (1906); *State v. Ryan,* 23 Conn. Supp. 425, 184 A.2d 183 (1962); *Commonwealth v. Butler,* 189 Pa. Super. 399, 150 A.2d 172 (1959); *Mularkey v. State,* 230 N.W. 76 (Wis. 1930); *State v. Mangum,* 121 S.E. 765 (N.C. 1924). That is the only question raised by appellant in his exception to the court's instruction No. 19. Carrying a "concealed weapon" on his person without a license to do so was a violation of law. RCW 9.41.050 and 060; *State v. Thomas,* 58 Wn.2d 746, 749, 364 P.2d 930 (1961).

The jury's verdict of manslaughter, a crime of violence, (*State v. Krantz,* 24 Wn.2d 350, 164 P.2d 453 (1945)) was based upon substantial evidence. The appellant's theory of the affray tendering the defense of self-defense was amply and fairly covered by the court's instructions to the jury. The court advised the jury that appellant had the right to use such force as appeared reasonably necessary to him in view of all the circumstances; that the use of excessive force with a deadly weapon, however, would not be justified in repelling a threatened attack with bare hands unless the slayer believed and had reasonable grounds to believe that he actually was in imminent danger of death or great bodily harm; also that one cannot provoke or commence an affray and then seek to justify the use of unreasonable force under the guise of self-defense.

 Assigned error (3) is likewise without merit. The record, a part of which we have quoted in the beginning hereof, indicates clearly that all the judge was trying to

do, and it was his duty to so do, was to see that the witness who had been asked to make a drawing upon the graph thoroughly understood the exhibits and that he was not confused by the drawings. One asked to draw a figure according to a given scale, particularly when there are two scales before him, is easily led into error. The court's effort to familiarize the witness with the graphs did not amount to a comment on the evidence and was not erroneous. *State v. Brown,* 19 Wn.2d 195, 142 P.2d 257 (1943); *State v. Adamo,* 128 Wash. 419, 223 Pac. 9 (1924).

■ Assignment of error (4) requires but a passing comment in view of the verdict reached by the jury. Both the original complaint and the amended complaint charged the appellant with first degree murder. In reference to the oral amendment allowed, no prejudice thereby was inflicted upon the appellant, nor were any of his substantial rights adversely affected. He was charged with first degree murder in both instances. The amendment, as allowed, merely removed the allegation that the defendant had the specific intent to kill a certain *named* person. The amendment omitted the name of the person and, instead, inserted "a human being." We stated in *State v. Collins,* 50 Wn.2d 740, 758, 314 P.2d 660 (1957):

> [T]o establish premeditation, an intent to kill any specific person need not be proved; an intent to kill any person who may be at a certain place or who may attempt to do a certain thing is sufficient. *State v. Baker* (1928), 150 Wash. 82, 272 Pac. 80; *Williams v. Commonwealth* (1920), 128 Va. 698, 104 S. E. 853.

The information considered amended by the proof remained a charge of murder in the first degree under RCW 9.48.030(1). *State v. Holt,* 52 Wn.2d 195, 324 P.2d 793 (1958); *State v. Estill,* 50 Wn.2d 245, 310 P.2d 885 (1957); *State v. Graeber,* 46 Wn.2d 602, 283 P.2d 974 (1955); *State v. Tharp,* 42 Wn.2d 494, 256 P.2d 482 (1953).

There was no error in allowing the amendment in the manner indicated, but even if there was, no prejudice resulted, as the jury, by its verdict, exonerated him of murder in any degree.

■ The statements made by the appellant to or in the presence of the several witnesses mentioned herein did not constitute a confession as the term is commonly understood. At most, they were admissions made at the scene of the shooting and while the investigation was still going on. Appellant conceded in oral argument and in his brief that no single statement made by him to or in the presence of the witnesses referred to constituted a confession, but that the aggregate of the several statements should be characterized as such and therefore pretrial procedures should have been followed pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0. There was no showing that a pretrial procedure, if called for, and we hold that it was not, would have affected the ultimate admissibility of the testimony of the witnesses to whom the statements were made. The court committed no error in his ruling. The most that can be said of the appellant's statements were that they were explanatory of his theory of what had occurred, that is, exculpatory in nature and not a confession. See *State v. Benson*, 58 Wn.2d 490, 494, 364 P.2d 220 (1961); *State v. Turner*, 58 Wn.2d 159, 361 P.2d 581 (1961).

The following appears in 2 Wharton, Criminal Evidence § 338 (12th ed.), p. 14:

> It is also held that to give to a statement the binding force of a confession, it must be an acknowledgment of guilt without any exculpating statement or explanation.

Also, 23 C.J.S. *Criminal Law* § 816, p. 156:

> A statement to amount to a confession must be inculpatory and not exculpatory in its nature . . . . a statement which admits the commission of the act, but which also gives legal excuse or justification, or which negatives any unlawful intent, is not a confession of the commission of a crime.

See *Benson* and *Turner*, *supra*.

We do not agree that isolated statements made at different times when considered in the aggregate constitute a confession as such.

The appellant personally, his counsel, and counsel for the state, agreed in writing at the beginning of the case that the

jury would be allowed to separate during the trial and until the conclusions of the arguments in the case.

RCW 10.49.110 provides:

> Juries in criminal cases shall not be allowed to separate, except by consent of the defendant and the prosecuting attorney, but shall be kept together, without meat or drink, unless otherwise ordered by the court, to be furnished at the expense of the county.

The statute was complied with. Notwithstanding this, the appellant submits, and we quote from his brief:

> [T]hat the tragic heartbreaking news completely disrupted the orderly conduct of the trial and deprived the defendant of the juries' undivided attention and consideration during this period of time.

■ No proof was offered in support of this statement and, in the absence of a positive showing, the appellant cannot be heard to complain. *State v. Skinner,* 111 Wash. 435, 191 Pac. 148 (1920); *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449 (1911); *State v. Holedger,* 15 Wash. 433, 46 Pac. 652 (1896).

A presumption of prejudice does not actually follow where jurors have been permitted to separate. *State v. Carlson,* 144 Wash. 311, 258 Pac. 12 (1927).

We quote in part from *State v. Pepoon, supra,* p. 644:

> [W]e must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure. This question being raised on a motion for new trial, where there is no showing even pointing to any invasion of the defendant's rights, but the claim of error resting exclusively on the theory that some juror might possibly have been subjected to undue influence, the assignment, under the great weight of authority, cannot be sustained.

In the light of the entire record, no prejudice resulted to appellant from the separation of the jury after they received the news of the assassination of President Kennedy.

On the contrary, his death, in our opinion, may have influenced them towards leniency rather than a finding of guilty of murder in either the first or second degree.

In any event, the appellant received a fair trial and no prejudicial error inheres in the record.

Judgment affirmed.

ROSELLINI, C. J., HUNTER, HAMILTON, and HALE, JJ., concur.

January 14, 1966. Petition for rehearing denied.