909 P.2d 1311 (1995)
Sharon KEENE, and Robert Keene, wife and husband, Respondents,
v.
Ronald EDIE, individually, Appellant, and
Judy Edie, individually, and Ronald and Judy Edie, husband and wife, and the marital community composed thereof, Defendants.
No. 33105-1-I.
Court of Appeals of Washington, Division 1.
May 1, 1995.
Publication Ordered January 30, 1996.
*1314 Clifford Freed, Frank & Rosen, Mary Roberts, Seattle, for Appellant.
Thomas Randolph Dreiling, Willard G. Smith, Seligmann Dreiling & Beckerman, Seattle, for Respondents. *1312
*1313 GROSSE, Judge.
Ronald Edie appeals the judgment awarded to Sharon Keene in her action for damages due to Edie's sexual abuse of her when she was a minor.
Edie bases his appeal on allegations of erroneous admission of: (1) graphic and prejudicial testimony of other victims pursuant to ER 404(b); (2) inappropriate deposition testimony, (3) an inflammatory "summary of abuse"; and (4) expert opinion partially based on post-hypnotic statements of the victim. Edie also alleges that RCW 4.16.340, the childhood abuse statute of repose, is unconstitutional as applied here. Further, he claims there was reversible error in the court's instructions regarding: (1) the burden of proof of an affirmative defense; and (2) the inclusion of "childhood sexual abuse" as an independent cause of action. Additionally, Edie claims the trial court made inappropriate judicial comment while giving a limiting instruction, erred by permitting recall of a witness for further cross examination after the witness had been excused, and erred in excluding evidence of Keene's financial motives. Finally, Edie contends that the accumulation of evidentiary errors requires a new trial. We affirm.
Edie initially claims the trial court erred under ER 404(b) in admitting the testimony of other alleged victims in the tort action: Heather Edie, Beverly Gallagher, and the deposition testimony of April Edie. The trial court held that the alleged acts were admissible as evidence of a common scheme or plan. The court also said the evidence may fall within other parameters of ER 404(b) because the evidence rebuts the defense of fabrication or false memories.[1] The trial court determined the evidence was relevant and the danger of undue prejudice did not outweigh the probative value of the evidence.[2]
*1315 Rulings under ER 404(b) are reviewed under an abuse of discretion standard. State v. Lough, 70 Wash.App. 302, 313, 853 P.2d 920 (1993), aff'd, 125 Wash.2d 847, 889 P.2d 487 (1995).[3] ER 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The trial court's conclusion of common scheme or plan is challenged by Edie, who claims there is an insufficient nexus between the conduct complained of by Keene and the violent nature of the acts claimed by his daughters. We reject this challenge.
Recently, the common scheme or plan exception to ER 404(b) was the subject of extensive analysis by the Supreme Court in State v. Lough:
When a defendant's previous conduct bears such similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates that the conduct was directed by design. People v. Ewoldt, 7 Cal.4th 380, 402-03, 867 P.2d 757, 27 Cal.Rptr.2d 646, 658-59 (1994). To establish common design or plan, for the purposes of ER 404(b), the evidence of prior conduct must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations.
(Footnotes omitted.) State v. Lough, 125 Wash.2d at 860,889 P.2d 487.
In arriving at its conclusion the Supreme Court recognized the split of authority on this exception in Washington appellate decisions, and recognized:
The heart of the controversy involves the meaning of the word "plan".
There are two different situations wherein the "plan" exception to the general ban on prior bad acts evidence may arise. One is where several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan. There is no question that evidence of a prior crime or act would be admissible in such a case to prove the doing of the crime charged. A simple example would be a prior theft to acquire a tool or weapon to perpetrate a subsequently executed crime. The other situation arises when an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes. The question before us is whether prior similar crimes or acts are admissible to demonstrate the existence of a plan which the accused used to commit the charged crime. The Defendant urges us to hold that common scheme or plan evidence under ER 404(b) is admissible only if a causal connection exists between the prior acts and the act charged and that the prior act of misconduct must be done in preparation for the charged offense. We decline to set so artificial a restriction as we perceive no real benefit from it and *1316 recognize that it would often bar relevant and reliable evidence.
State v. Lough, 125 Wash.2d at 854-55, 889 P.2d 487.
The court noted that the result in these kinds of cases will largely be fact dependent, but also noted with approval a decision of the Minnesota Supreme Court, State v. Wermerskirchen, 497 N.W.2d 235 (Minn.1993):
The Minnesota Supreme Court recognized in Wermerskirchen that some academic commentators would like the "common scheme or plan" doctrine to be given a very narrow application but that the modern decisions have tended to follow Professor Wigmore's view of admissibility of evidence of other sex crimes to prove common scheme or plan and to thereby prove the doing of the act charged. Professor Wigmore explained as follows:
The committing of a single previous rape, or rape attempt, upon another woman may not in itself indicate such a design ... Nevertheless, a single previous act, even upon another woman, may, with other circumstances, give strong indication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design.
Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon character..., it may carry with it great significance as to a specific design or plan of rape. There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings.
(Footnote omitted.) 2 John H. Wigmore, Evidence § 357, at 335-42 (James H. Chadbourn rev. ed. 1979).
The Minnesota court also notes that Professor Wright, while generally opposed to the admission of other-crime evidence to prove corpus delicti, concedes that the courts will admit other-crime evidence to prove the doing of the charged act where the evidence is highly probative or the need for such proof is unusually great and gives as an example such evidence in cases of sexual abuse of children.
In the present case, the evidence at issue is repetitive and highly probative and the need for such proof is unusually great given that the victim's recall was diminished by the ingestion of the drugs. The purpose of ER 404(b) is to prohibit admission of evidence designed simply to prove bad character; it is not intended to deprive the State of relevant evidence necessary to establish an essential element of its case. Here the Defendant deprived the State of significant evidence of the victim's testimony by the way he committed the crime. He induced both physical helplessness and memory loss and confusion by administering the drugs. The pattern of inducing such a state in other victims is relevant to proving that the victim here was induced to helplessness and then sexually assaulted.
(Footnote omitted.) State v. Lough 125 Wash.2d at 858-59, 889 P.2d 487.
In this case, we acknowledge the differences in the way Edie treated the various victims, but also acknowledge the similarities, particularly that pertaining to "grooming", the principal means of seduction described by Keene. The testimony of all of the victims corroborated this description of Edie's approach, as did portions of the testimony of April.
The direct testimony of Keene was based on her recollection of sexual abuse beginning when she was 12 or 13 years of age. She said the abuse began with Edie massaging her breasts so, as Edie claimed, her breasts would grow larger. She described how the fondling escalated to performances of oral sex on him and to numerous acts of intercourse. Many of the incidents took place in the garage of the Edie home, although some took place elsewhere in and outside of the home. Keene testified the sex was the result of enticements by Edie. Keene noted money, favors, and bribes were central to Edie's insistence on sex. These included motorcycle *1317 rides, camping trips, transportation, permission to go places, permission to stay out late, beer, marijuana, and wine. Keene indicated that Edie's daughter April would procure the acts from Keene for her father in order to benefit from the "enticements", or so she would not have to do the acts herself.
Edie did not deny having sex with Keene. He claimed, however, that the sex was consensual, that Keene wanted and received money for the act, that it happened only once, and that it was during a motorcycle ride in the country.
Keene's version was corroborated by the testimony of Beverly Gallagher, a neighborhood friend of April Edie and Sharon Keene. She testified that in exchange for "trades" or enticements, she would allow Edie to fondle her breasts. She testified that each incident was preceded by an offer of something she would be allowed to do if she consented to the touching. She said there was always an enticement or "trade" involved.
Heather Edie testified that when she was 11 or 12 years of age, her father began fondling her breasts. She also told of enticements with beer and cigarettes. The fondling continued and escalated to Heather having to be available for additional fondling in Edie's bed.
Unlike the testimony of Keene, Heather also testified to brutal incidents of discipline and sexual abuse. One time when Edie and Heather returned from out of state where they left Mrs. Edie and the other daughters, Edie made Heather sleep with him in his bed. When Edie returned from work the next day, he found Heather and several of her friends partying at the house. He got angry, sent the other kids home, and took Heather to the garage. There, he tore off her clothes, cut off her hair with grass shears, and penetrated her mouth with his penis and ejaculated on her. Again, he made her sleep with him. Edie was concerned that Heather might run away so for the next 4 days he took her to the construction site where he was working, and then home where he would fondle her. After 4 days Heather convinced her father she would not run away or tell anyone, so he let her stay home alone. However, after Edie left for work, she ran away.
By the time of this trial, Edie's daughter April had died. However, excerpts of her deposition from an earlier case were admitted into evidence. Through this testimony April discussed her love for, but great fear of, her father. She discussed sexual abuse committed by her father, starting with the fondling of her breasts and promises of making things easier for April at home. He said he would not hit April with the belt and would get her stepmother off her back if she would give in to what he wanted. The ensuing sexual abuse took place in the garage, the laundry room, the basement, the stairs, in his bed, in her bed, in the truck, and while camping.
April indicated that Sharon Keene and Beverly Gallagher were present more than once, and that another friend Nancy may have been present at least once during some of the incidents. Portions of the deposition also discussed and corroborated the sexual contact between Edie and the other young girls, including Keene.
April also testified to brutal treatment from her father. The underlying testimony of April was that she was threatened with beatings and a loss of privileges if she did not submit to her father. April told of a time when Edie cut off half of her hair with grass shears. She also testified that she moved out for 6 months once and when she asked to return home her father said she could in return for sexual favors.
Sustaining the trial court's admission of the portions of the testimony of April and that of Edie's daughter, Heather, both describing violence, degrading rapes, and related abuse, is more problematic, particularly in view of the highly prejudicial nature of the testimony. However, to some extent, aspects of this material were corroborative of the scheme described by Keene in that they pertained to the basis of April's function as go-between, requesting sexual favors for her father due to her fear of him. We also believe that they fall within the res gestae exception of ER 404(b) as that concept is viewed by our Supreme Court. See State v. Lane, 125 Wash.2d 825, 889 P.2d 929 (1995).
*1318 In Lane, the court summarized the res gestae exception as follows:
Once the trial court has found res gestae evidence relevant for a purpose other than showing propensity and not unduly prejudicial, that evidence is admissible under the res gestae exception to ER 404(b), so long as the State has shown by a preponderance of the evidence that the uncharged crimes occurred and were committed by the accused. [State v. Tharp, 96 Wash.2d 591, 593-94, 637 P.2d 961 (1981).] There is no additional requirement, as imposed by the Court of Appeals here, that res gestae evidence be relevant for an additional purpose, such as plan, motive, or identity.
Lane, 125 Wash.2d at 834,889 P.2d 929.
Here, we believe the evidence was relevant to establish the overall atmosphere in and around the Edie household during the time period in question.
In summary, the trial court properly determined the challenged evidence to be relevant under the common scheme or plan exception. That evidence which does not precisely fit within that exception falls within the res gestae exception. The trial court properly weighed the probative value of evidence against its prejudicial effect. The jury was properly instructed as to how to view this evidence. It was admissible under ER 404(b).
Edie specifically claims the trial court erred in admitting April's deposition testimony regarding childhood abuse.
The admission of the former testimony of an unavailable witness under ER 804(b)(1) is discretionary with the trial court. The standard of review is an abuse of that discretion. In re Estate of Foster, 55 Wash. App. 545, 779 P.2d 272 (1989), review denied, 114 Wash.2d 1004, 788 P.2d 1079 (1990).
ER 804(b)(1) provides, in part, that the statements are not excluded by the hearsay rule if the declarant is unavailable as a witness and has given former testimony.
Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
Edie claims that his former counsel who represented him in the action brought against him by his daughter did not have the opportunity or a motive to develop April's testimony with respect to the complaints of the plaintiff in this action, Sharon Keene. Edie claims counsel focused solely on the time the alleged incidents took place with his daughter because in that case he was only concerned with the statute of limitation since, regardless of the substance of the claims, they were time barred.
A reading of the parts of the deposition which were entered as evidence belies Edie's claims. Review indicates that the deposition was a general exploratory examination in which counsel for the defendant attempted to learn what April knew about the claims of childhood sexual abuse by her father.
The testimony did not violate ER 404(b), and its admission under ER 804(b)(1) was proper. The trial court did not abuse its discretion in admitting the deposition testimony.
Edie next contends the trial court erred in admitting the plaintiff/victim's written recollection summary of the sexual abuse as an exhibit.
After Keene contacted counsel, prior to the action being filed and before undergoing hypnosis, she prepared a summary of the events and the abuse that she said occurred. Counsel for Keene had this summary marked and entered as exhibit 4. The trial court admitted a redaction of the document pursuant to ER 803(a)(5) after excising portions as being pure hearsay. That rule provides that certain recorded recollections are not hearsay.
A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to *1319 reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
ER 803(a)(5). According to the comment to ER 803(a)(5), the rule is broader than the previous law requiring no independent recollection of the facts. See State v. Benson, 58 Wash.2d 490, 364 P.2d 220 (1961). The rule is said to be broader in that it requires only that the witness have insufficient recollection to testify fully and accurately.
Edie argues the rule does not allow the recorded recollection to be received as an exhibit unless offered by an adverse party. Here that was not the case. Admission of the document under a strict reading of ER 803(a)(5) was error. However, this does not necessarily preclude the admissibility of the document. The court's ruling can be affirmed if the record provides a tenable basis for admitting the testimony. State v. S.S., 67 Wash.App. 800, 812, 840 P.2d 891 (1992). The evidentiary ruling may be upheld if the testimony was admissible for any proper purpose. State v. Jackson, 102 Wash.2d 689, 694, 689 P.2d 76 (1984).
As argued at trial, the evidence of the summary was necessary to rebut Edie's argument that Keene's testimony was brought about after post-hypnotic treatment. Thus the statement is not hearsay as it is admissible under ER 801(d)(1)(ii) which provides:
(d) Statements Which Are Not Hearsay. A statement is not hearsay if
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) ... or (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication ...
At trial Edie argued that pursuant to Washington law Keene was required to produce evidence of her pre-hypnotic memory. The document was then offered to rebut the charge that Keene was fabricating her abuse under hypnosis, rendering her testimony inaccurate and unreliable. The document was admissible.
Edie also contends the trial court erred in permitting the testimony of Keene's therapist. He claims the testimony of Dr. Fehrenbach should not have been permitted as her opinions were based on post-hypnotic statements of Keene and were without foundation. Had this been the position of defense counsel at trial the issue might have some validity. However, the record discloses that trial counsel did not object on grounds of inadequate foundation or any other ground. Based on the record before this court, defense counsel did not object at all.[4] Instead, counsel chose to vigorously cross-examine the psychologist in an attempt to undermine her credibility. Keene's counsel objected to this line of questioning by counsel for the defendant, seeking to discredit Dr. Fehrenbach. The trial court permitted it indicating the defense had the right to show that the psychologist was relying on an improper basis or foundation for her opinion.
By not objecting to the admission of evidence in the trial court, a party waives the right to raise the evidentiary issue on appeal. Washburn v. Beatt Equipment Co., 120 Wash.2d 246, 283, 840 P.2d 860 (1992). Edie failed to preserve this issue for appeal by failing to raise it below, therefore, this court should not consider it. See Van Vonno v. Hertz Corp., 120 Wash.2d 416, 426-27, 841 P.2d 1244 (1992); RAP 2.5(a).
Next, Edie claims Keene's causes of action expired in September 1981, 3 years after Keene turned 18. He claims that allowing Keene to proceed with her action is unconstitutional and against his due process rights because the Legislature cannot revive a claim *1320 against him through later enactment of RCW 4.16.340 in 1988.
In 1988 the Legislature enacted RCW 4.16.340 in response to the case of Tyson v. Tyson, 107 Wash.2d 72, 727 P.2d 226 (1986), which rejected a discovery rule for tort claims based on childhood sexual abuse. The intent of the legislation was to reverse the result of Tyson, and adopt a discovery rule for childhood sexual abuse cases. The Legislature explicitly provided that the statute applied retrospectively. Laws of 1988, ch. 144, § 3. Edie argues this retrospective application violates his constitutional right to due process.[5]
The question for this court is whether the amended statute violates Edie's due process rights by depriving him of a vested right. See Caritas Servs., Inc. v. Department of Social & Health Servs., 123 Wash.2d 391, 413-15, 869 P.2d 28 (1994); In re Marriage of MacDonald, 104 Wash.2d 745, 709 P.2d 1196 (1985).
Edie asserts he obtained a vested property interest in the affirmative defense of Keene's failure to file within the time allowed under the former limitations statute. However, a vested right
must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.
MacDonald, 104 Wash.2d at 750, 709 P.2d 1196 (quoting Godfrey v. State, 84 Wash.2d 959, 963, 530 P.2d 630 (1975)).
Caritas Servs., 123 Wash.2d at 414, 869 P.2d 28.
Generally, statutes of repose involve remedies and do not create fundamental rights. Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); In re Marriage of MacDonald, 104 Wash.2d at 750, 709 P.2d 1196. The expiration of a statute of limitation does not create vested property rights. Bellevue School Dist. 405 v. Brazier Const. Co., 100 Wash.2d 776, 675 P.2d 232 (1984). The Legislature may extend a statute of limitation and apply it retroactively to revive barred claims. Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 47, 785 P.2d 815 (1990). A vested right comes about only if a party has changed its position in reliance upon the previous law. See In re Santore, 28 Wash.App. 319, 324, 623 P.2d 702, review denied, 95 Wash.2d 1019 (1981). Edie's defense of the former limitation statute does not show that any specific course of action was taken by him on the assumption that the old rule would continue. The statute is an ordinary statute of limitation which applies to a particular class of tort plaintiffs. It was Keene's remedy against Edie, not any of his vested rights, which was affected when the former statute expired. The lapse of the former statute does not endow Edie with any vested property right in immunity from suit.
Edie claims the trial court committed reversible error by giving an instruction defining childhood sexual abuse as a crime, and further erred by using an expanded definition of childhood sexual abuse. In addition, Edie contends the court erred regarding his burden of proof on the affirmative defense that Keene's delay in discovering her injuries was not reasonable for purposes of the applicable statute of limitation.

Childhood Sexual Abuse
RCW 4.16.340(5) defines and expands the limitation statute for childhood sexual abuse as any act committed against persons under the age of 18 which would have been a violation of RCW 9A.44 or RCW 9.68A.040, or prior laws of similar effect at the time the act was committed.
Counsel for both parties believed it was necessary to further define "childhood sexual abuse" but disagreed as to that definition. Keene defined "childhood sexual abuse" in terms of the forbidden acts outlined in various statutes, especially those similar and in effect at the time the alleged events were said to have happened. Edie defined child sexual abuse in terms of assault and battery, thus requiring a victim to prove *1321 he or she was in apprehension of imminent physical violence. Because the trial court followed the instructions proposed by Keene, Edie claims the jury was not properly instructed because Keene did not have to prove she was in imminent danger of physical violence. Further, Edie claims the instruction created childhood sexual abuse as a separate cause of action in derogation of the case of St. Michelle v. Robinson, 52 Wash.App. 309, 316, 759 P.2d 467 (1988), which specifically held that childhood sexual abuse was not a separate cause of action.
The trial court refused to follow the St. Michelle holding, indicating that while the case may have been good law prior to the promulgation of RCW 4.16.340, as a result of the statute, it was no longer. The court held that "4.16.340 is defining actions based on childhood sexual abuse. I mean, it just could not be clearer." We agree.
Requiring a victim to prove he or she was in apprehension of imminent physical violence is not what the Legislature intended under the current criminal sexual abuse statutes. Many victims of childhood sexual abuse are groomed or enticed into sexual acts. It would defy common sense to hold that such children do not fall under the protection of the statute. Further, in discussing exceptions to the instructions, the trial court noted that the plaintiff moved to conform the pleadings to the evidence, which was accepted.
The first section of instruction 13 defines childhood sexual abuse as acts "[s]oliciting, enticing or otherwise communicating with a child under the age of seventeen years for immoral purposes, with or without the child's consent". Although Edie agreed that the definition would contain causes of action for sexual acts against victims which were criminal at the time of the alleged acts, he contends that the Legislature did not intend the solicitation paragraph found in former RCW 9.79.130 to be included under RCW 4.16.340(5). Former RCW 9.79 was the forerunner to RCW 9A.44, and is a law of similar effect, thus permitted by RCW 4.16.340. The trial court did not err in giving the instruction.

Burden of Proof
Edie claims the trial court also erred in instructing the jury as to the burden of proof regarding his defense of Keene's failure to timely file her action under the limitation statute. The argument fails for two reasons: (1) the instruction was approved by defense counsel, and (2) the instruction is a correct statement of the law.
Counsel did not take exception to instruction 6,[6] and cannot challenge it for the first time on appeal. See Christensen v. Munsen, 123 Wash.2d 234, 248, 867 P.2d 626 (1994).
Secondly, Edie as defendant was asserting a statute of limitation as an affirmative defense. The party asserting such defense has the burden of proving each element of the defense. Brougham v. Swarva, 34 Wash.App. 68, 74, 661 P.2d 138 (1983); see also, Haslund v. Seattle, 86 Wash.2d 607, 619, 547 P.2d 1221 (1976). As such the trial court's giving of the instruction was not error.

Additional Assignments of Error
Edie also contends the trial court inappropriately commented on the evidence *1322 in violation of Const, art. 4, § 16 when it orally instructed the jury that it was to consider the testimony that was about to be heard of other acts of sexual misconduct with women other than Keene, for a limited purpose. The court explained the limitation that, although a person may have committed other acts of misconduct, under the law it is not proof that he committed the acts for which he is now charged.
Edie claims the court characterized the testimony as a verity rather than as an allegation, and thereby improperly endorsed the witnesses' credibility. Furthermore, the words "other acts of sexual misconduct" implied that the allegations heard from Keene constituted "sexual misconduct."
The purpose of prohibiting judicial comments on the evidence is to prevent the jury from being influenced by the trial judge's opinion of the evidence submitted. State v. Jacobsen, 78 Wash.2d 491, 495,477 P.2d 1 (1970); Const, art. 4, § 16. Since a comment on the evidence violates a constitutional prohibition, the issue may be raised for the first time on appeal. State v. Lampshire, 74 Wash.2d, 888, 893, 447 P.2d 727 (1968).
However, a statement by the court will constitute a comment on the evidence only if the court's attitude toward the merits of the case or the court's evaluation relative to a disputed issue is inferable from the statement. State v. Louie, 68 Wash.2d 304, 313-14, 413 P.2d 7 (1966), cert. denied, 386 U.S. 1042, 87 S.Ct. 1501, 18 L.Ed.2d 610 (1967)[.]
State v. Hansen, 46 Wash.App. 292, 300, 730 P.2d 706, 737 P.2d 670 (1986).
Comments by the court must be reviewed in light of the facts and circumstances of the case. State v. Painter, 27 Wash.App. 708, 714, 620 P.2d 1001 (1980), review denied, 95 Wash.2d 1008 (1981).
Here, the limiting instruction went on to discuss what cannot be used as proof of the acts that are alleged in this case. Further, there were two additional oral limiting instructions and one written limiting instruction given. Although these were not identical, the meaning was the same.
For judicial comments to violate Const, art. 4, § 16,
the jury must be able to infer from the trial judge's comments that he personally believes or disbelieves evidence relative to a disputed issue. The action of the judge must be such that it will fairly import to the jury an expression of judicial opinion relative to credibility of some significant evidence.
(Citation omitted.) Jankelson v. Cisel, 3 Wash.App. 139, 145-46, 473 P.2d 202 (1970), review denied, 78 Wash.2d 996 (1971).
Viewing the limiting instruction in this light, Edie has failed to prove that the limiting instruction "comment" was an inappropriate comment on the evidence, or even prejudicial. Therefore the court did not err. See State v. Richard, 4 Wash.App. 415, 424, 482 P.2d 343 (1971).
Before trial, Keene moved to exclude evidence of the financial status of any party as being irrelevant. Edie asserted that the evidence of Keene's fragile financial condition and her misconception that he was wealthy was relevant to a financial motive for making false accusations. The trial court excluded the evidence.
Edie's contention that Keene's belief regarding his supposed wealth was misguided goes to the very heart of why the trial court excluded this evidence. This argument was speculative at best. Even if the evidence was relevant, the admission and exclusion of relevant evidence is within the sound discretion of the trial court and will not be reversed absent a manifest abuse of that discretion. In re Young, 122 Wash.2d 1, 53, 857 P.2d 989 (1993); State v. Swan, 114 Wash.2d 613, 658, 790 P.2d 610 (1990), cert denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991).
Edie cites State v. Smits, 58 Wash.App. 333, 338-39, 792 P.2d 565 (1990) to argue it was reversible error not to be able to show Keene's bias in excluding the evidence of financial position. Smits and other cases cited are cases regarding limitation of cross examination in criminal cases, and defense counsel's ability to determine if the witness had filed a civil suit as a result of the matter. The cases are not on point.
*1323 In addition, to preserve an error in the exclusion of evidence, the party seeking admission of the evidence must make an offer of proof. ER 103(a)(2). Here, other than the remark that Keene was not correct as to Edie's wealth, there was no other substantive information made known to the trial court upon which it could have made a more reasoned decision. The trial court did not err in excluding this evidence.
Next, Edie asserts that once Cynthia Marberg had been dismissed as a witness, the trial court erred in allowing her to be recalled for further cross examination. Edie concedes that a trial court has the discretion to permit a witness to be recalled for further cross examination,[7] but argues it is an abuse of discretion to permit the recall of an excused witness when there was no surprise involved, and where counsel for the plaintiff had the information at the time the witness was subject to initial cross examination. Edie offers no citation to authority for this later proposition. Further, the Schuman case indicates it might be an abuse of discretion not to re-open a case if the testimony goes to an issue that is at the heart of the controversy. See State v. Jones, 80 Wash. 588, 602, 142 P. 35 (1914). The trial court did not abuse its discretion in permitting the witness to return for further cross examination.
Finally, Edie claims that the combined effects of error require a new trial, even if those errors individually might not require reversal. State v. Coe, 101 Wash.2d 772, 789, 684 P.2d 668 (1984); State v. Alexander, 64 Wash.App. 147, 154, 822 P.2d 1250 (1992). We disagree. We have reviewed the record of the entire proceeding and find that none of the claimed errors, even their combined effect, were so prejudicial such to deny Edie a fair trial.
The decision of the trial court is affirmed.
KENNEDY, Acting C.J., and SCHOLFIELD, J., concur.
NOTES
[1] If the record provides a tenable basis for admitting the testimony, then it can be said to have been admitted properly. State v. S.S., 67 Wash. App. 800, 812, 840 P.2d 891 (1992); see also State v. Mutchler, 53 Wash.App. 898, 903, 771 P.2d 1168, review denied, 113 Wash.2d 1002, 777 P.2d 1050 (1989). In other words, the trial court's evidentiary ruling may be upheld if the testimony was admissible for any proper purpose. State v. Jackson, 102 Wash.2d 689, 694, 689 P.2d 76 (1984).
[2] The trial court and the parties agree that the evidence was introduced to show the high probability that the sexual abuse occurred and that Edie, more probably than not, committed the acts against Keene. Counsel and the trial court expressed little doubt that the evidence was relevant. The court expressed its opinion that the method used by Edie was "almost a modus operandi" to secure sex from teenage girls, and it had a potential for corroborating Keene's claims wherein the defense contested she was mistaken or did not remember clearly. Therefore, the trial court found it was highly probative of whether or not the sexual abuse occurred.

The trial court agonized over whether the evidence was overly prejudicial compared to its probative value. Initially the court allowed the testimony as being indicative of a plan or method of approaching Edie's daughters and also their girl friends who were coming to the house. The court indicated the evidence might go to the issue of identity and corroboration as well. The defense told the court it planned to contest these issues through the testimony of Dr. Elizabeth Loftus. The court then indicated its determination that the prejudice did not outweigh the probative value.
Following additional argument by counsel for the defense, the trial court reopened the issue and agreed to reconsider, following offers of proof. After these offers, the trial court affirmed its original decision, holding that the evidence was admissible under ER 404(b) as being on point to the exception for a common plan to exploit and sexually abuse young women that were part of his family, or in his household and available to him. The court found there was evidence of a continuing series of sexual encounters that were promoted by fear, enticements, or a combination thereof.
The court did not discount the fact that the evidence may also go to fabrication or false memories. In addition, the court found the evidence to be highly prejudicial and limited the evidence, as it found some "beyond the pale."
[3] While the rule usually has been examined in a criminal context, the rule can be used in civil cases. An erroneous ER 404(b) ruling is reversible error if, within reason, the error materially affects the outcome of the trial. Dickerson v. Chadwell, Inc., 62 Wash.App. 426, 430-31, 814 P.2d 687 (1991), review denied, 118 Wash.2d 1011, 824 P.2d 490 (1992). See also, 5 Karl B. Tegland, Wash.Prac, Evidence § 114, at 396 (3d ed. 1989).
[4] The record provided for review does not contain the direct testimony of Dr. Fehrenbach. Edie has only provided the record of the vigorous cross examination wherein counsel attempts to discredit the psychologist by showing through her own admission that her opinions were grounded, at least in part, on or through pos-thypnotic statements and treatment of Keene. Nowhere in the record or in Edie's briefing is there an objection to having Dr. Fehrenbach testify or an objection specifically to the foundation for her testimony. Instead counsel's tactic seems to have been the cross examination.
[5] Edie relies heavily on cases from Virginia state courts. These cases are distinguishable because Virginia has a statute which prohibits retroactive application for new statutes of repose.
[6] Instruction 6 states:

"Defendant Ronald Edie has the burden of proving one of the following propositions:
"First, that the plaintiffs failed to commence this lawsuit within three years of the time Sharon Keene discovered or reasonably should have discovered that her psychological and emotional injuries were caused by the childhood sexual abuse of Ronald Edie, or;
"Second, that the plaintiffs failed to commence this lawsuit within three years of the time Sharon Keene discovered that the childhood sexual abuse of Ronald Edie caused the psychological and emotional injuries for which her claim is brought.
"For purposes of your determination, you are instructed that the plaintiffs commenced this lawsuit on October 28, 1991. In addition, it is not necessary for you to determine which act in a series of continuing acts of childhood sexual abuse caused the injuries complained of. If you find that the defendant did engage in childhood sexual abuse with the plaintiff when she was between the ages of twelve and seventeen, you should compute the date of discovery from the date of discovery of the last such act by the defendant which is part of a common scheme or plan of childhood sexual abuse."
[7] See State v. Schuman, 89 Wash. 9, 22, 153 P. 1084 (1915).