UNITED STATES of America,
Plaintiff-Appellee,

v.

Nepomuceno MORENO–NUNEZ, Jose Armando Badilla-Yescas, Ignacio Ramirez-Ruiz, Defendants-Appellants.

Nos. 78–3057 to 78–3059.

United States Court of Appeals,
Ninth Circuit.

May 1, 1979.

Charles S. Sabalos and Frank R. Zapata (argued), Tom O'Toole, Federal Public Defender, R. Lamar Couser, Tucson, Ariz., for defendants-appellants.

Rhonda Repp, Asst. U. S. Atty. (argued), Tucson, Ariz., for the U. S.

Before DUNIWAY and KENNEDY, Circuit Judges, and BONSAL,* District Judge.

DUNIWAY, Circuit Judge:

In these cases, each of the three defendants was convicted of conspiracy to possess heroin with intent to distribute it, and of possession of heroin with intent to distribute it. Each was given concurrent sentences on his two convictions. We affirm. We consider the arguments of each appellant separately.

1. *Moreno-Nunez, No. 78–3057.*

At the outset of the trial, counsel for Badilla announced his intention to place his client on the stand, and to comment on the failure of Moreno to take the stand if Moreno did not do so. The court ruled "that counsel will not comment on [Moreno's] fail-

* The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

ure to testify but may argue that the defendant's [Badilla's] testimony is uncontradicted."

In his closing argument, Badilla's counsel said:

Now what I'm telling you is uncontradicted. Mr. Badilla's theory of this case is uncontradicted by anyone, and he had the guts to take the stand and withstand cross-examination by this young woman, the Government, and he told you what his involvement was in this case, which was mere presence and nothing else.

You have got to determine for yourself whether that means something to you, that he was willing to take the stand and testify, and whether the fact that Mr. Ruiz took the stand and testified, whether that makes any difference to you.

We know nothing about Mr. Moreno's background, any prior arrests that he might have had, any involvement that he has. We know nothing about him.

MR. ZAPATA [Moreno's counsel]: Object, Your Honor, to counsel getting any farther into that line of argument.

THE COURT: If there's no evidence, there's no point in arguing it. (RT282)

Counsel for Badilla then turned to something else. Moreno's counsel did not ask for a curative or protective instruction.

Moreno argues that what Badilla's counsel said amounted to a comment on Moreno's failure to testify and requires a reversal. It certainly is not a direct comment on Moreno's not testifying, and we do not think that the jury was likely to so consider it, especially in the light of what the judge said during his instructions:

The law does not compel a defendant to take the witness stand and testify, and no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify. (RT325)

We have more than once ruled that comment on a defendant's failure to testify, whether by the prosecutor, the court, or a codefendant, is improper. *United States v. King,* 9 Cir., 1976, 552 F.2d 833, 844; *United States v. De La Cruz Bellinger,* 9 Cir., 1970,

422 F.2d 723, 726. But we have not ruled that statements such as those made by Badilla's counsel in this case require reversal. We decline to do so now.

In *United States v. Hines,* 1972, 147 U.S. App.D.C. 249, 455 F.2d 1317, the comment was quite similar to the comment in our case. The *Hines* court said:

Appellant Ware's counsel complying with the trial court's mandate when it denied appellant Hines' motion [to sever], did not directly ask the jury to draw any adverse inference from appellant Hines' failure to testify. Instead, he merely asked the jury to draw a favorable inference, from his client's willingness to testify. Of course, due to his strong phraseology, there is a possibility that the jury's attention was drawn to appellant Hines' silence. However, Hines' failure to take the stand was "no more than incidentally 'pointed up'" and did not constitute "an exaggerated form of one of the inherently prejudicial factors in multi-defendant trials." 147 U.S.App.D.C. at 266–267, 455 F.2d at 1334–5 (footnotes omitted).

In *Hines,* the judge offered a protective instruction, which counsel rejected. In our case, counsel did not ask for one. *Hines* is closely in point. *See also United States v. Washington,* 5 Cir., 1977, 550 F.2d 320, 328; *United States v. Hodges,* 5 Cir., 1974, 502 F.2d 586, 587. *De Luna v. United States,* 5 Cir., 1962, 308 F.2d 140, is quite different. There, counsel for a codefendant who testified referred twice, specifically, to De Luna's failure to testify. See 308 F.2d at 142 and at 155 (concurring opinion). Not so here. *De Luna* was distinguished in *De La Cruz Bellinger, Hines, Washington* and *Hodges,* all *supra.* In our case, counsel for Badilla went to the very edge of committing reversible error, but did not quite cross the line.

*2. Ramirez-Ruiz, No. 78–3059.*

*a. Comment on failure to testify.*

Ramirez makes the same argument as Moreno. However, Ramirez testified. He does not explain how what counsel for Ba-

dilla said about Moreno could prejudice Ramirez.

b. *Sufficiency of the evidence.*

We have examined the evidence against Ramirez and find it sufficient.

3. *Badilla-Yescas, No. 78–3058.*

a. *Denial of severance.*

■ It was not error to deny Badilla's motion to sever, which was based on his desire to call Moreno to the stand and compel him either to testify or to invoke his privilege against self-incrimination. Badilla did not show that his defense probably would have been helped by his being able to comment on Moreno's refusal to testify, assuming that, if called, Moreno would have refused. Under these circumstances, it was not error to deny Badilla's motion to sever. *United States v. De La Cruz Bellinger, supra,* 422 F.2d at 726. The court did not abuse its discretion. *See United States v. King, supra,* 552 F.2d at 846. What we said there applies here: "From the information before us, it seems as conceivable that [Moreno] would refuse to testify . . ., or would even further implicate [Ramirez], as that he would exculpate [Ramirez] . . . ."

b. *Testimony about negotiations with Moreno, in which other substances were mentioned.*

■ In setting the stage for its case, the government presented narcotic agent witnesses who testified that, when they first negotiated with Moreno to purchase heroin from him, he also offered to get them other "contraband," and marijuana. Badilla argues that this evidence should have been excluded under Rule 404(b), F.R.Ev. We disagree. The evidence was material as showing Moreno's willingness to deal in illegal drugs, including heroin, and showed his "motive, opportunity, intent, preparation, [and] plan" (Rule 404(b). Here we think that "the probative value of [the evidence] is not outweighed by the danger of unfair prejudice," *United States v. Espinoza,* 9 Cir., 1978, 578 F.2d 224, 227, so that the

evidence was properly admitted. As the court said in *United States v. Magnano,* 2 Cir., 1976, 543 F.2d 431, 435, "the Government offered the prior crime evidence for the legitimate purpose of showing the background and development of the conspiracy . . . ."

c. *Instructions about the conspiracy.*

■ The evidence would support a finding by the jury that Badilla and Ramirez joined in a conspiracy with Moreno shortly before the final transaction in the course of which all were arrested. The jury, after it had begun to deliberate, sent the judge a written question:

Is the defendant guilty of a conspiracy if the evidence shows that he was a part of the transaction only at the time of the arrest, or must it be shown that he was a member of the conspiracy from the first day? (RT343)

After some discussion with all counsel, the court called the jury in and told them:

Now in answering that, I'm going to have to assume that this particular defendant you are inquiring about you have found from the evidence and under the Court's instructions of the law that he was a member of the conspiracy at some time up to the time of his arrest, and on that assumption I would tell you that it is not necessary that he be a member of the conspiracy from the first day of the existence of the conspiracy. And in that connection, I will re-read a paragraph from the original instructions, and it reads:

One who willfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy.

I believe that answers your questions. (RT345–46)

This language was different from what the court told counsel that he was going to say. It omits a statement that the jury "must find from the evidence beyond a reasonable doubt that he was a member of the conspiracy at some time." (RT343)

Nevertheless, what the court did say is an accurate statement of the law, and counsel does not argue otherwise. He is simply disappointed that the judge did not say more, as the judge had said that he would do. The judge, however, had been emphatic in his original charge to the jury on the subject of reasonable doubt, and nothing in his answer to the question even hints that a finding of guilt beyond a reasonable doubt is not required. We find no reversible error here.

In each appeal, the judgment appealed from is affirmed.