[No. 28329-4-I.   Division One.   May 10, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. CURTIS WADE DICKERSON, *Appellant.*

*Rafe Schwimmer* and *Patterson, Metcalf, Rowley & Schwimmer,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Wall, Deputy,* for respondent.

FORREST, J. — Curtis Wade Dickerson appeals his conviction of unlawful delivery of cocaine and sentence of 70 months, which included a 24-month school zone enhancement. We affirm.

At approximately 11 p.m. on November 3, 1990, undercover police officers Metz and Wright executed a drug buy/bust operation in front of Deano's Market on the corner of 12th and Yesler. Deano's is located within 1,000 feet of the grounds of Bailey Gatzert School. The officers parked in front of the market and saw Dickerson inside. Dickerson approached the officers' vehicle and asked Wright, the passenger, what she wanted. Wright responded, "a 20", or $20 worth of rock cocaine. Dickerson asked to see her money. When Wright held the money out the window, Dickerson tried to grab it but Wright pulled it away and asked to see the drugs.

Dickerson then looked behind him and motioned to another person to come toward him. The other person was Dickerson's codefendant, Earl Bowman. Wright testified that Dickerson asked Bowman if he had "a 20 or a two-oh".

Dickerson then entered the back seat of the officers' vehicle. At that time, Bowman approached Wright and told her he had cocaine and that Wright need not wait for Dickerson. Wright and Bowman exchanged money and a substance later identified as cocaine, and Bowman walked away. Meanwhile, Dickerson, in the back seat, repeatedly asked the officers if they wanted to buy drugs from him. Because Bowman was walking away, Metz yelled at Dickerson to get out of the car, which he did.

The officers followed Bowman and radioed to officers in the arrest unit to arrest him. After Metz and Wright saw Bowman arrested, they turned their vehicle around and proceeded toward the precinct. They passed Dickerson still standing in front of Deano's Market. Metz testified that Dickerson waved at the car as if he wanted it to stop, but that Metz drove past him and radioed one of the officers in the arrest unit to arrest Dickerson. Metz testified that he then drove around the block and watched until another officer approached Dickerson and arrested him.

Dickerson and Bowman were each charged with unlawful delivery of cocaine within 1,000 feet of the perimeter of school grounds. The cases were consolidated for trial. The court denied Dickerson's pretrial motion to sever.[1]

At trial, Dickerson called Officer Walker to testify about an incident that occurred over a year earlier relating to a drug buy/bust operation. Walker testified that Dickerson approached Walker and another undercover officer in their vehicle and asked them if they wanted to buy rock cocaine. Dickerson entered the vehicle and asked to see Walker's money. When Walker, who was driving, held the money over his shoulder, Dickerson, who was in the back seat, grabbed

---

[1] The basis for the motion to sever was Bowman's disruptive behavior during pretrial proceedings.

it. Walker arrested Dickerson for theft and found no cocaine on his person.

The jury found Dickerson and Bowman guilty as charged. Dickerson was sentenced to 70 months, which included a 24-month school zone enhancement.

Dickerson contends that the comment on his failure to testify by counsel for his codefendant, Bowman, deprived him of a fair trial and requires reversal. We disagree.

■ Numerous Washington cases have held that comments by the prosecutor on a defendant's failure to testify constitute error and may require reversal.[2] Counsel does not cite nor has our research discovered any Washington case dealing with such comments made by counsel for a codefendant rather than the prosecutor.[3] However, other courts have recognized that such a comment can, under certain circumstances, deprive a nontestifying defendant of a fair trial.[4] We agree with this reasoning and find that *State v. Hoffman*, 116 Wn.2d 51, 804 P.2d 577 (1991), although addressing prosecutorial misconduct, furnishes the standard for evaluating such a claim.

> Where improper argument is charged, the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect. Reversal is not required if the error could have been obviated by a curative instruction which the defense did not request. The failure to object to a prosecuting attorney's improper remark constitutes a waiver of such error unless the remark is deemed to be so flagrant and ill intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

(Footnotes omitted.) *Hoffman*, at 93. The statement by Bowman's counsel which is the basis of his claim is as follows:

---

[2]*See, e.g., State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10, *cert. denied*, 498 U.S. 1046, 115 L. Ed. 2d 1033, 111 S. Ct. 2867 (1991); *State v. Ramirez*, 49 Wn. App. 332, 336, 742 P.2d 726 (1987).

[3]This is perhaps evidence of the high professional standards of the criminal defense bar.

[4]*See, e.g., United States v. Moreno-Nunez*, 595 F.2d 1186 (9th Cir. 1979); *United States v. De La Cruz Bellinger*, 422 F.2d 723 (9th Cir.), *cert. denied*, 398 U.S. 942, 26 L. Ed. 2d 278, 90 S. Ct. 1860 (1970); *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962), *reh'g denied*, 324 F.2d 375 (1963).

> But, ladies and gentlemen, when you go back there, you're going to be asked to tell the truth of this case. What is the truth? And there's a lot of problems with you finding that truth. One is Mr. Dickerson chose not to testify. And I'm not suggesting anything by that; that's his right, but his part of the story, and maybe that's for a tactical reason, was not heard.

Dickerson's counsel did not object to this statement, did not request a curative instruction, and did not move for a mistrial. Dickerson now argues that the language is so prejudicial that his conviction must be reversed. We attach importance to the failure to move for a mistrial for two reasons. First, the trial court is clearly in a much better position than an appellate court operating from a cold record to evaluate whether a remark can be cured by admonition or requires a mistrial based on the whole flow of the trial and context of the remark. Second, defense counsel should not be entitled to speculate on the possibility of a favorable jury verdict and then, in the case of conviction, argue that the case should never have gone to the jury in the first place.[5] Like omitting cross examination, there may, indeed, be sound tactical reasons not to request a mistrial even when the defendant is entitled thereto. The State's case may have weaknesses that the State could cure in the event of a retrial, or defense counsel may think the prosecuting attorney's misconduct might backfire and actually operate to the defendant's advantage. In the event of egregious misconduct by a prosecutor, or here counsel for a codefendant, without objection or motion for a mistrial, it would seem more appropriate on appeal to review the matter for ineffective assistance of counsel rather than to permit the defendant to make, for the first time on appeal, an argument he may have deliberately chosen not to make at trial.

In any event, it is clear that the remark here in question was not incapable of being neutralized by an admonition. A jury obviously is aware that a defendant has not testified.

---

[5]*See State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046, 112 L. Ed. 2d 772, 111 S. Ct. 752 (1991).

Some risk of an adverse inference is inevitably present. That being the case, the casual mention of a fact. already well known to the jury seems hardly capable of causing any substantial prejudicial effect. In the absence of an improper comment, we rely on the judge's instruction not to draw an adverse inference from a defendant's failure to testify, and the jury's good faith effort to follow such instruction to adequately protect the defendant's rights. If a standard instruction is sufficient to deal with the jury's personal knowledge from observation, a special admonition certainly should be adequate to deal with a comment telling the jury what it already knows. The ultimate issue in every such case is not whether the prosecutor has done something of which the court disapproves, but whether such conduct has had an adverse impact on the defendant's right to a fair trial.

The comment here in question was immediately followed by an acknowledgment that the defendant had a right not to testify. Although the same basic standard is applicable to comments of a prosecutor and of a codefendant's counsel, there are differences in evaluating the impact. The prosecutor's comments are aimed at convicting the nontestifying defendant and their only purpose can be to encourage an improper inference. A codefendant often, as here, is merely arguing his own defense and not accusing the nontestifying defendant.[6]

On this record, we find little reason to believe the remark had any effect; this is presumably why there was no objection to the remark. Unquestionably, however, any effect could have been cured by an appropriate admonition by the court. Accordingly, the failure to object "constitutes a waiver of such error". *Hoffman*, at 93.

Affirmed.

---

[6]We note that in *De Luna*, codefendant's counsel sought to place all guilt and culpability upon the nontestifying codefendant, thus greatly increasing the prejudice. *De Luna* was the only case among those involving a comment by counsel for a codefendant, see footnote 4, in which the court reversed the conviction on the ground that the defendant was prejudiced by the comment.

The balance of this opinion is without precedential value and will not be published, but will be filed pursuant to RCW 2.06.040.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1013 (1993).