# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 70857-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRENDA NICHOLAS, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 12, 2015 |
| | ) | |

APPELWICK, J. — Nicholas appeals the calculation of her offender score, arguing that the trial court erred in including foreign convictions without conducting a comparability analysis. The State concedes this error. In addition, Nicholas raises eight issues in her statement of additional grounds. We remand for resentencing. We otherwise affirm.

## FACTS

On December 8, 2011, Seattle police responded to the scene of a homicide at Four Freedoms House, an assisted living apartment complex for the elderly. Officers found the victim, Francis Fleming, lying on his back with obvious signs of trauma to his head and neck. Medics pronounced Fleming dead at the scene.

Detectives interviewed several Four Freedoms residents and discovered that Fleming had a large amount of valuable coins in his apartment. The majority of the coin collection was missing. Fleming's neighbor told police that Fleming kept many of the coins in a leather brief case, which was also missing.

In the course of their investigation, police contacted Sylvia Sutton, a friend of Fleming's who had moved out of Four Freedoms several months prior. Sutton told the officers that she was the victim of a financial scam by a woman who professed to be a

psychic. Sutton knew the woman as "Monica Marks." Sutton said that Marks was able to get a very large amount of money from her and the case was currently under investigation by the Elder Financial Abuse Detail of the Seattle Police Department. Sutton also said that Marks knew about Fleming's coin collections and had expressed a strong interest in them.

Detectives ran the name "Monica Marks" and the phone number she gave to Sutton. They discovered that the number was associated with Brenda Nicholas and another woman named Gilda Ramirez. They also discovered that the Kirkland Police Department had investigated Nicholas and Ramirez for theft and trafficking in stolen property. As part of that investigation, Kirkland police officers executed a search warrant on a house in Lynnwood. Nicholas and Ramirez were present at the time of the search, as was a man named Charles Jungbluth. Officers seized several items, including a leather briefcase. Inside the briefcase were papers with the full names of Fleming, Nicholas, and Sutton.

Nicholas, Ramirez, and Jungbluth were arrested for Fleming's murder. Ramirez and Jungbluth both admitted their involvement in the murder, but maintained that Nicholas was the mastermind of the operation.

Nicholas was charged with one count of first degree murder with a deadly weapon enhancement. Ramirez and Jungbluth received plea deals for their testimony against Nicholas.

Under a separate cause number, Nicholas was charged with theft related crimes committed from September 26, 2007 through June 9, 2012. Nicholas pleaded guilty, in that case, to two counts of first degree theft and one count of first degree identity theft.

2

A jury found Nicholas guilty of first degree murder with a deadly weapon enhancement. She was sentenced for her counts of murder, theft, and identity theft together in a single hearing. The State calculated her offender score at five, which included two prior out-of-state convictions. Based on that calculation, the court sentenced Nicholas to 412 months in prison.

Nicholas appeals.

## DISCUSSION

Nicholas argues that the trial court erred in including out-of-state convictions in her offender score without conducting a comparability analysis. The State concedes this error. Nicholas also raises eight issues in her statement of additional grounds.

### I.   Sentencing Error

Under the Sentencing Reform Act, an out-of-state conviction is included in a defendant's offender score if the prior offense is comparable to a Washington offense. RCW 9.94A.525(3). Classification of an out-of-state conviction is a mandatory step in the sentencing process. Id. The State bears the burden of proving the existence of prior convictions by a preponderance of the evidence. State v. Mendoza, 165 Wn.2d 913, 920, 205 P.3d 113 (2009) (disapproved of on other grounds by State v. Jones, ___ Wn.2d ___, 338, P.3d 278 (2014)). Where the State fails to meet its burden and the defendant fails to object, the proper remedy is to remand for resentencing to allow the State to present evidence of the defendant's prior convictions. Mendoza, 165 Wn.2d at 930; see also Jones, 538 P.3d at 281, 282-83.

At sentencing, the State calculated Nicholas's standard range sentence based on an offender score of five. The offender score included two prior convictions from

California. The State did not provide the sentencing court with documentation pertaining to the California convictions. It did not cite to the statute or statutes under which Nicholas was convicted or provide the elements of the crimes. It simply listed the prior crimes as "grand theft" and "theft of elder/depend[e]nt a[d]ult $400+."

The court sentenced Nicholas with an offender score of five. Neither the State nor the trial court conducted a comparability analysis. The State concedes that this was improper.

The State also concedes that Nicholas did not waive her right to a comparability analysis. Unless the State provides a certified copy of the judgment and sentence, a defendant must affirmatively acknowledge the facts and information introduced for the purposes of sentencing. Mendoza, 165 Wn.2d at 930. "The mere failure to object to a prosecutor's assertions of criminal history does not constitute such an acknowledgement. Nor is a defendant deemed to have affirmatively acknowledged the prosecutor's asserted criminal history based on his agreement with the ultimate sentencing recommendation." Id. at 928 (citation omitted) (footnote omitted).

During her trial testimony, Nicholas acknowledged having California convictions for "grand theft" and "theft and embezzlement." The prosecutor asked her if the convictions were related to "the psychic thing," and Nicholas replied, "Yes." Neither the prosecutor nor Nicholas expanded further on the convictions. We agree that this was insufficient to constitute an affirmative acknowledgment of the facts and information relating to her out-of-state convictions. Furthermore, in Nicholas's plea agreement, she did not check the box that read: "The defendant understands that one or more convictions from other jurisdictions have been included in the offender score, and agrees that these

4

convictions have been properly included and scored according to the comparable offense definitions provided by Washington law." Nicholas did not waive her right to a comparability analysis.

Likewise, Nicholas's counsel did not waive a comparability analysis on her behalf. Counsel did not object to the State's offender score calculation and requested a sentence at the low end of the associated standard range. But, counsel's agreement to an offender score calculation or sentencing recommendation is not an affirmative acknowledgement of criminal history. State v. Lucero, 168 Wn.2d 785, 788-89, 230 P.3d 165 (2010).

The trial court did not engage in the mandatory comparability analysis. Nicholas did not waive her right to that analysis. We accept the State's concession of error and remand for resentencing.

II.   Statement of Additional Grounds

Nicholas also raises several additional grounds for relief.

A.  Romani Interpreter's Testimony

Nicholas argues that the trial court erred in allowing the State's witness Tony Urich to testify as a Romani language interpreter. The State called Urich to interpret a jail phone call between Nicholas and her husband in which Nicholas spoke both English and Romani.

The admission or refusal of evidence lies largely within the sound discretion of the trial court. Maehren v. City of Seattle, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979). Absent an abuse of discretion, we will not reverse the trial court's decision to allow certain evidence. State v. Jones, 95 Wn.2d 616, 628, 628 P.2d 472 (1981).

During pretrial motions in limine, the State informed the court that it intended to call Urich as a witness. Defense counsel did not object to Urich's qualifications at that time. After Urich testified on direct, defense counsel requested that he be able to question Urich's qualifications on cross-examination. The State asked that the court first review Urich's qualifications on the record. The court agreed and questioned Urich about his background and experience speaking Romani. It concluded that he was qualified to testify as an interpreter. Defense counsel then cross-examined Urich.

Nicholas asserts that Urich was not adequately qualified. No one is certified to interpret Romani. In the absence of a certified interpreter, the trial court must determine if the proposed interpreter is qualified. See RCW 2.43.030(1)(b). Urich was a native Romani speaker who had previous experience interpreting the language. Nicholas was able to cross-examine Urich about his qualifications. Under these circumstances, it was not an abuse of discretion to permit him to testify. See, e.g., State v. Laureano, 101 Wn.2d 745, 766-67, 682 P.2d 889 (1984) (trial court properly permitted interpreter to testify where defendant's principal language was Spanish and interpreter was of Cuban descent and defendant was able to cross-examine interpreter about her qualifications and translation), overruled on other grounds by State v. Brown, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906 (1990).

Nicholas further asserts that the court improperly considered Urich's qualifications after his testimony, rather than before. During motions in limine, defense counsel explicitly stated that he did not object to Urich's qualifications. Based on that stipulation, the trial court did not abuse its discretion in failing to consider Urich's qualifications prior to his testimony.

Nicholas also argues that the jury should have been present for the questioning of Urich's qualifications, so it could make its own conclusion about whether he was qualified. But, whether a witness is qualified is a matter within the sound discretion of the trial court. See, e.g., State v. Rodriguez, 163 Wn. App. 215, 231-32, 259 P.3d 1145 (2011); Barci v. Intalco Aluminum Corp., 11 Wn. App. 342, 352, 522 P.2d 1159 (1974). It is the jury's job to determine a witness's credibility. State v. Schneider, 36 Wn. App. 237, 243, 673 P.2d 200 (1983). And, the jury was able to do so here when Urich testified.

Finally, Nicholas contends that the judge should have allowed her to present her written interpretation of the phone calls so the jury could compare them to Urich's testimony. But, Nicholas did not request this from the court. And, Nicholas was able to testify about her interpretations that differed from Urich's.

The trial court did not abuse its discretion in admitting the interpreter's testimony.

B. Failure to Grant Mistrial

Nicholas argues that trial court erred in failing to grant a mistrial after a juror fainted upon viewing Fleming's autopsy photos. We review a trial court's denial of a motion for mistrial for abuse of discretion. State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). After the juror fainted, defense counsel orally moved for a mistrial. Counsel subsequently withdrew the motion. The trial court thus did not abuse its discretion in not granting the motion.

C. Ineffective Assistance of Counsel

Nicholas maintains that counsel's choice to withdraw the motion for mistrial was against her wishes and constituted ineffective assistance of counsel. To prevail on a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell

7

below an objective standard of reasonableness based on consideration of all the circumstances and (2) the deficient performance prejudiced the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The reasonableness inquiry requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Matters of trial strategy are generally left to counsel's professional discretion. In re Per. Restraint of Davis, 152 Wn.2d 647, 720, 101 P.2d 1 (2004). There may be sound tactical reasons not to request a mistrial. State v. Dickerson, 69 Wn. App. 744, 748, 850 P.2d 1366 (1993). Here, Nicholas fails to show that counsel's decision to withdraw the motion was not a legitimate trial tactic.

Nicholas lists numerous additional ways in which she perceived counsel's performance to be deficient. But, her remaining assertions lack the required specificity for our review. RAP 10.10(c) ("[T]he appellate court will not consider a defendant/appellant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors."); State v. O'Connor, 155 Wn. App. 282, 293-94, 229 P.3d 880 (2010) (declining to review statement of additional grounds where appellant did not explain the underlying facts for his claims).

D. Failure to Grant Continuance

Nicholas maintains that the trial court erred in denying defense counsel's motions for a continuance. But, counsel's motions and their respective denials are not part of the record before us. We cannot review this challenge. See Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994) ("An insufficient record on appeal precludes review of the alleged errors.").

8

E. Admission of Autopsy Photos

Nicholas argues that the trial court erred in allowing the State to present graphic photos of Fleming's autopsy, because they were extremely prejudicial. Under ER 403, evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value. The trial court has wide discretion in balancing the probative value of evidence against its potential prejudicial impact. State v. Coe, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). A trial court abuses its discretion only if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. Gorman v. Pierce County, 176 Wn. App. 63, 84, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 495 (2014).

Nicholas moved to exclude "autopsy photos in excess of what is needed to explain Mr. Fleming's injuries or more gruesome than what is needed to explain his injuries or the circumstances of his death." Nicholas asked that the court exclude a group of four specific photos and admit only one or two out of a second group of four. The court considered the photos individually. It excluded several of the photos as impermissibly inflammatory. It admitted one photo from the first group to show cause of death. It also admitted two photos from the second group, finding that their likely prejudicial effect did not outweigh their probative value.

The photographs are not part of the record before this court. But, we can see from the record that is before us that the court carefully considered the photographs, their relevance, and their potential to prejudice the jury. The court gave a legitimate reason for admitting the photo from the first group. And, in admitting the other photos, the court

9

granted Nicholas's request to admit only one or two photos from the second group. This was not an abuse of discretion.

F. Admission of Jail Phone Call Recordings

Nicholas maintains that the trial court erred in allowing the prosecution to use the recording of a second jail phone call. She protests that the State did not follow proper procedure by submitting the tape into evidence before playing it to the jury. But, the failure to follow procedure does not require reversal where it does not affect the ultimate admissibility of the evidence. See, e.g., State v. Hettrick, 67 Wn.2d 211, 220, 407 P.2d 150 (1965).

During Nicholas's testimony, the State sought to play a portion of the phone call for impeachment purposes. Defense counsel initially objected that he had not heard the call. The court took a recess so counsel could listen to the recording. After listening to the tape, counsel had no objections. Nicholas thus waived a challenge to the tape's admissibility on appeal. RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

G. Detective's Failure to Answer Questions

Nicholas argues that the trial court erred in allowing State's witness Detective Cloyd Steiger to refuse to answer questions from the defense. During cross-examination, Detective Steiger declined to answer questions concerning an ongoing investigation. Nicholas's counsel did not object.[1] We decline to review this claim on appeal. RAP 2.5(a).

---

[1] Nicholas asserts—without citation—that her "counsel was upset and addressed the judge about it." But, the record shows that counsel did not object during the testimony or at any other time that day. Nicholas does not point to a time when counsel raised this

## H. Cumulative Error

Finally, Nicholas alleges that cumulative error warrants the reversal of her conviction. The accumulation of otherwise nonreversible errors may deny the defendant a fair trial. Coe, 101 Wn.2d at 789. Nicholas fails to show that any errors occurred at her trial, as the only error involved her sentencing. Accordingly, there is no cumulative error.

We remand for the sentencing court to conduct a comparability analysis and for resentencing. We otherwise affirm.

WE CONCUR:

---

issue to the court. We decline to comb the record for evidence to support her claim. See RAP 10.10(c) ("[T]he appellate court is not obligated to search the record in support of claims made in a defendant/appellant's statement of additional grounds for review.").