# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59524-9-II |
| Respondent, | |
| v. | |
| DEREK PAUL RILEY, JR., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Derek Riley, Jr. appeals his convictions of first degree child rape, second degree child rape, first degree child molestation, and second degree child molestation and his sentence. The convictions arose from Riley's sexual abuse of his stepdaughter over a period of several years.

We hold that (1) as the State concedes, the prosecutor improperly asked Riley whether witnesses were lying, but Riley cannot show prejudice; (2) the prosecutor did not comment on Riley's right to remain silent; (3) the prosecutor did not improperly minimize the burden of proof during closing argument; (4) the prosecutor did not improperly vouch for the credibility of the victim and her mother during closing argument; (5) as the State concedes, the prosecutor improperly vouched for the credibility of the State's case during closing argument, but Riley waived his challenge by failing to object; (6) Riley's claim that he received ineffective assistance

of counsel because his defense counsel did not move for a mistrial when three witnesses gave opinions that Riley was guilty fails; (7) cumulative error does not require a new trial; and (8) four challenged community custody conditions must be addressed on remand consistent with this opinion.

Accordingly, we affirm Riley's convictions, but we remand for the trial court to address the challenged community custody conditions consistent with this opinion.

FACTS

*Background*

Riley and Faith Riley married in 2006. Faith[1] had a daughter, RB (born September 2002), from a previous relationship. Riley had two children from a previous relationship. One of Riley's children was Erik Watson, who was about four years older than RB. When Riley and Faith married, Riley, Faith, RB, and Watson were living in one household in Vancouver.

In April 2010, when RB was seven, Child Protective Services (CPS) was called after RB suggested to a friend that Riley had touched her genitals. The police arrived to take RB into protective custody. Riley told Faith, "Don't say anything. Don't tell them anything." Rep. of Proc. (RP) at 682-83. When RB was interviewed, she denied that anything had happened. RB was returned home three days later.

In August 2020, RB disclosed to Faith that Riley had been sexually abusing her. RB described multiple incidents of molestation and sexual intercourse by Riley while they lived together. Following the investigation, the State charged Riley with first degree child rape, second degree child rape, first degree child molestation, and second degree child molestation.

---

[1] Because Riley and Faith have the same last name, we refer to Faith by her first name. No disrespect is intended.

*Trial*

At trial, RB testified that Riley first molested her when she was seven years old, when Riley pulled her pants down and licked her vagina. RB testified that she later told her friend JM, that Riley had done stuff to her.

RB recalled that not long after, police came to her house in April 2010 to take her away. Before she left, Riley took her into another room and instructed her not to tell anyone what had happened to her. He said he did not want to get in trouble and she "didn't want to know what would happen if things had gotten brought out." RP at 484. RB stated that when she was interviewed, she said that nothing had happened because Riley told her not to tell anyone.

RB testified that after that, there were multiple occasions when Riley would touch and lick her vagina. RB further testified that Riley inserted his finger in her vagina when she was around nine years old. And when Riley found out that RB had sex with a boy when she was 13, RB testified that Riley began inserting his penis into her vagina. This occurred repeatedly until 2020.

Vancouver Police officer Rotha Yong testified about coming to Riley's house in April 2010 to take custody of RB. She testified that Riley told Faith, "Don't say anything. Don't tell them anything." RP at 682-683. Riley objected based on a standing objection that this testimony involved Riley's exercise of his right to remain silent.[2] The trial court noted the objection.

Faith testified that RB disclosed in August 2020 that Riley had abused her. Later, Faith testified that she divorced Riley "[b]ecause he raped [RB]." RP at 776. Riley objected and the

---

[2] Before trial, Riley filed a motion in limine to exclude this testimony because it was a comment on his right to remain silent. The trial court reserved ruling on the issue.

trial court sustained the objection, instructing the jury that Faith was not allowed to state a legal conclusion about rape.

JM testified that sometime in 2010, RB disclosed that Riley was touching her. JM told her mother and then talked with CPS people. When JM was in high school, she reached out to RB because she thought RB might still be in danger. JM said that the first time RB said nothing happened, but the second time "she was a little more honest." RP at 670. At that point, Riley objected, and the trial court instructed the jury to disregard the last portion because witnesses are not allowed to comment on another witnesses' honesty.

Watson testified that we he was around 12 years old, he heard Riley call RB "sexy." RP at 696. Watson later testified that he no longer had a relationship with Riley. He stated, "[W]hat had happened to [RB] was kind of the thing that is kind of unforgivable, you know. So it was something that I didn't ever really want to talk to him again." RP at 700. Riley objected, and the trial court instructed the jury to disregard the statement.

Riley testified and denied ever touching RB inappropriately or forcing her to have sexual intercourse with him.

During cross-examination, the prosecutor asked Riley whether his son, Watson, testified falsely when he stated he heard Riley call RB "sexy." RP at 767. Defense counsel objected, arguing that Riley was not permitted to comment on another witness's veracity. The trial court overruled the objection, stating that there was a factual discrepancy and that broadened cross-examination was permitted. Riley testified that Watson obviously was mistaken in what he heard.

The prosecutor then asked Riley whether it was Riley's testimony that RB was "making everything up." RP at 767. Defense counsel did not object. Riley responded that he believed

RB had assistance in making up what she said. The prosecutor continued by asking whether RB was an actress. Riley testified that RB was "a very good actor." RP at 768.

The prosecutor then asked if Faith was an actress. Defense counsel objected that the question was not relevant. The trial court overruled the objection. Riley testified that Faith "puts on a relatively good show" for people at church and that "she is a very good actor without any formal education in acting." RP at 768.

*Jury Instruction*

The trial court provided the following instruction to the jury:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. . . . The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

Clerk's Papers (CP) at 17.

*Closing Argument*

During closing argument, the prosecutor discussed Faith's lack of a motive to lie. The prosecutor stated that nothing in Faith's testimony reflected that she had a motive to fabricate anything. The prosecutor then stated, "She wasn't hiding anything. She gave honest, straightforward answers to all those questions." RP at 853. The prosecutor then discussed RB's lack of motive to lie: "Nothing in the record reflects that she had the motive to fabricate anything." RP at 853. The prosecutor stated, "[RB's] not an actress. Faith's not an actress. These are just people who came in and testified. These people who live here in Vancouver. They weren't coached. They weren't trained on how to testify. They came in to just simply take an oath and tell you the truth." RP at 853-54. Riley did not object to these statements.

5

The prosecutor also referenced Officer Yong's testimony that Riley told Faith and RB to not tell investigators anything. Riley's defense counsel objected to the argument. Riley argued that the prosecutor improperly commented on Riley's right to remain silent. The trial court overruled Riley's objection.

During rebuttal argument, the prosecutor argued,

> One thing I want to say is that sometimes in defense's arguments, there's this sort of dangling of this shiny object over here so you don't pay attention to, you know, real core aspects of the testimony in this case. And that shiny object that they dangle over there is what defense counsel would qualify as reasonable doubt.

RP at 877. Riley did not object to these statements.

The State also stated during rebuttal that the detective and forensic child interview specialists do not charge cases. He stated, "I am the prosecutor in this case. They do not investigate false allegations. They investigate. That's all they do. I make the charging decision." RP at 883. Riley did not object to these statements.

*Verdict and Sentencing*

The jury convicted Riley on all counts. For all of the convictions, the jury also found aggravating factors that Riley abused his position of trust and the offenses were part of an ongoing pattern of abuse. At sentencing, the trial court imposed various community custody conditions.

Riley appeals his convictions and the imposition of certain community custody conditions.

## ANALYSIS

### A.    PROSECUTORIAL MISCONDUCT

Riley argues that the prosecutor committed prosecutorial misconduct by (1) asking Riley during cross-examination whether RB and Watson were lying, (2) commenting on Riley's

6

assertion of the right to remain silent, (3) minimizing the burden of proof during closing argument by characterizing Riley's evidence and arguments as a "shiny object," (4) vouching for the credibility of the victim and her mother during closing argument, and (5) vouching for the credibility of the State's case during closing argument. We conclude that all of Riley's arguments fail.

### 1. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of all the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). Our analysis considers "the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury's verdict. *Id.*

When the defendant fails to object to the challenged portions of the prosecutor's argument, they must show that the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction would not have cured the resulting prejudice. *Zamora*, 199 Wn.2d at 709. "In other words, the defendant who did not object must show the improper conduct resulted in *incurable* prejudice." *Id.* If a defendant fails to make this showing, the prosecutorial misconduct claim is waived. *Slater*, 197 Wn.2d at 681.

### 2. Asking Riley to Comment on Witnesses' Credibility

Riley argues, and the State concedes, that the prosecutor committed misconduct when he asked Riley to comment on RB's and Watson's credibility. We agree that the questions were improper, but we conclude that Riley cannot show prejudice.

It is improper for a prosecutor to ask a witness whether another witness is lying. *State v. Cook*, 17 Wn. App. 2d 96, 106, 484 P.3d 13 (2021). Here, the prosecutor asked Riley whether RB was "making everything up" or was an "actress" and whether Watson testified falsely. RP at 767-768. Riley objected to portions of these questions, but the trial court overruled the objections.

The State concedes that the comments on the credibility of witnesses were improper but argues that Riley cannot show prejudice. We accept the State's concession that the questioning was improper. The issue is whether there is a substantial likelihood that the misconduct affected the jury's verdict. *Slater*, 197 Wn.2d at 681.

Riley argues that the prosecutor's questioning placed him in a bad light in front of the jury. However, the prosecutor did not directly ask Riley whether RB and Watson were liars, and in fact Riley did not directly say that they were lying. Instead, the questions allowed Riley to explain his contention that RB had assistance in formulating her statements and that Watson was mistaken. This testimony did not place Riley in a bad light.

The questioning here did not force the jury to choose between competing accusations of perjury. Because the misconduct was isolated and did not result in Riley calling RB and Watson liars, we conclude that there is not a substantial likelihood that the prosecutor's questions affected the verdict. Accordingly, we hold that Riley's prosecutorial misconduct claim on this basis fails.

3. Comment on Riley's Right to Remain Silent

Riley argues that the prosecutor impermissibly commented on Riley's exercise of the right to remain silent by referencing that he told Faith, "Don't say anything. Don't tell them anything" when the police arrived at his home. RP at 682-83. We disagree.

Both the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution guarantee a defendant the right to be free from compelled self-incrimination, including a right to remain silent. *State v. Pinson*, 183 Wn. App. 411, 416-17, 333 P.3d 528 (2014). A comment on the right to remain silent occurs when the State uses evidence of the defendant's silence to its advantage, either as substantive evidence of the defendant's guilt or to suggest that the silence admitted guilt. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

Here, Riley did not remain silent when the police arrived. Instead, he directed Faith to remain silent. Therefore, the prosecutor was commenting on what Riley said, not on his silence. There is no constitutional right implicated here.

Riley argues that this case is similar to *State v. Burke*, in which the defendant's father advised him to remain silent when police began questioning him about having sex with an underage girl. 163 Wn.2d 204, 207, 181 P.3d 1 (2008). At trial, the State argued that the defendant really believed that the girl was 16, he would have said something during the police interview. *Id.* at 208-09. The court held that the State violated the defendant's right to remain silent. *Id.* at 222.

This case bears no resemblance to *Burke*. In that case, the defendant was the person who was instructed to remain silent. But Faith is not the defendant here. The State used Riley's statement to Faith as evidence that he had something to hide. This is not a comment on Riley's right to remain silent, but eliciting testimony about a verbal statement he made.

Accordingly, we hold that Riley's prosecutorial misconduct claim on this basis fails.

4.    Minimizing the Burden of Proof

Riley argues that the State improperly minimized the State's burden of proof during rebuttal closing argument by characterizing reasonable doubt as a "shiny object" used to distract the jury.  We disagree.

In a criminal case, the State bears the burden of proving every element of the crime beyond a reasonable doubt.  *State v. Restvedt*, 26 Wn. App. 2d 102, 127, 527 P.3d 171 (2023).  It is improper for a prosecutor to minimize or trivialize the State's burden of proof.  *State v. Lindsay*, 180 Wn.2d 423, 436, 326 P.3d 125 (2014).  The prosecutor cannot minimize "the importance of the [beyond a] reasonable doubt standard and of the jury's role in determining whether the State ha[d] met its burden."  *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009).  However, the prosecutor may respond to a defendant's arguments.  *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Here, during rebuttal argument, the prosecutor stated,

> One thing I want to say is that sometimes in defense's arguments, there's this sort of dangling of this shiny object over here so you don't pay attention to, you know, real core aspects of the testimony in this case.  And that shiny object that they dangle over there is what defense counsel would qualify as reasonable doubt.

RP at 877.

However, Riley did not object to these comments.  We do not view these statements as flagrant and ill-intentioned.  And if Riley had objected, the trial court could have cured any prejudice by reminding the jury about the instructions regarding burden of proof and reasonable doubt.

In any event, when read in context, the prosecutor's comment was not improper.  The prosecutor was responding to Riley's arguments and characterized them as a distraction.  The prosecutor urged the jury not to be distracted and to focus on the evidence.  The prosecutor did

not minimize or trivialize the State's burden of proof or undermine the reasonable doubt standard. In addition, the trial court properly instructed the jury on the State's burden of proof.

Accordingly, we hold that Riley's prosecutorial misconduct claim on this basis fails.

5.    Vouching for Credibility of Witnesses

Riley argues that the State committed prosecutorial misconduct by vouching for the credibility of RB and Faith during closing argument. We disagree.

Improper vouching occurs if the prosecutor places the prestige of the government behind the witness. *State v. Robinson*, 189 Wn. App. 877, 892–93, 359 P.3d 874 (2015). However, there is a difference between the prosecutor's personal opinion, as an independent fact, and an opinion based upon or deduced from the evidence. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). Misconduct occurs only when it is clear and unmistakable that the prosecutor is not arguing an inference from the evidence but instead is expressing a personal opinion. *Id.* at 54. However, we recognize that the prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

Here, the prosecutor stated that Faith "g[a]ve honest, straightforward answers to all those questions." RP at 853. And regarding both RB and Faith, the prosecutor stated, "They weren't coached. They weren't trained on how to testify. They came in to just simply take an oath and tell you the truth." RP at 854.

However, Riley did not object to these statements. We do not view these statements as flagrant and ill-intentioned. And if Riley had objected, the trial court could have cured any prejudice by reminding the jury of the instruction that the jury is the sole judge of witness credibility and that attorney statements are not evidence.

In any event, the prosecutor's comments about RB's and Faith credibility were not improper because they reflected a reasonable inference from the evidence. The prosecutor argued from the evidence that neither RB nor Faith had a motive to lie, stating that nothing in record reflected that Faith or RB had a motive to fabricate anything. Only then did he make statements regarding their credibility.

Accordingly, we hold that Riley's prosecutorial misconduct claim on this basis fails.

6.    Vouching for Credibility of the State's Case

Riley argues, and the State concedes, that the prosecutor committed misconduct by vouching for the credibility of the State's charging decision during closing argument. We conclude that Riley waived this argument.

Here, the prosecutor emphasized that he was the one who made the charging decision in Riley's case. We agree that this statement was improper because it implied that the prosecutor's personal opinion was that Riley was guilty.

However, Riley did not object to these statements. We do not view these statements as flagrant and ill-intentioned. And if Riley had objected, the trial court could have cured any prejudice by ordering the jury to disregard the comments and reminding the jury of the instruction stating that attorney statements are not evidence.

Accordingly, we hold that Riley waived his prosecutorial misconduct claim on this basis.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Riley argues that he received ineffective assistance of counsel because his defense counsel failed to move for a mistrial after three witnesses gave opinions that Riley was guilty. We disagree.

1. Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). To prevail on an ineffective assistance of counsel claim, a defendant must show both that defense counsel's performance was deficient and that the deficient performance was prejudicial. *Id.*

Defense counsel's representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). There is a strong presumption that defense counsel's performance was reasonable. *Bertrand*, 3 Wn.3d at 128. To rebut that presumption, a defendant bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Vazquez*, 198 Wn.2d at 248.

Whether to object typically is a strategic or tactical decision. *Id.* And a legitimate trial strategy is to forgo an objection when defense counsel wishes to avoid highlighting certain evidence. *Id.* In addition, to establish deficient performance based on a failure to object, a defendant must show that the trial court would have sustained the objection. *Id.*

In addition, in order to prevail on a claim that defense counsel's failure to request a mistrial constituted ineffective assistance of counsel, a defendant must establish that the request for a mistrial would have been granted. *See State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012) (articulating that standard for a motion to sever).

2. Analysis

Here, Riley fails to show both that (1) defense counsel's representation was deficient, and (2) the trial court would have granted a motion for a mistrial.

13

Riley's defense counsel objected each time a witness offered an opinion on guilt. When RB's friend JM testified that RB was "a little more honest" when they conversed, RP at 670-71, defense counsel moved to strike, and the trial court instructed the jury to disregard that portion. When Riley's son Watson testified that "what had happened to [RB] was kind of the thing that is kind of unforgivable," RP at 700-01, defense counsel moved to strike and the court again instructed the jury to disregard. Finally, defense counsel objected when Faith mentioned that she filed divorce because Riley raped RB, and the court instructed the jury that Faith could not give a legal conclusion. Defense counsel clearly was not deficient in objecting to these statements.

Riley argues that defense counsel was deficient because she also did not move for a mistrial. But there may be legitimate tactical reasons to not request a mistrial. *State v. Dickerson,* 69 Wn. App. 744, 748, 850 P.2d 1366 (1993). Defense counsel here may not have wanted a mistrial for various strategic reasons. For example, defense counsel may have been happy with how the trial was going and may have believed that an acquittal was possible.

Riley also must establish that a mistrial would have been granted. " 'A mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly.' " *State v. Gaines*, 194 Wn. App. 892, 897, 380 P.3d 540 (2016) (quoting *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979)). The fact that the jury heard these witnesses' opinions on guilt was mitigated by the fact that the trial court immediately sustained Riley's objections and the court provided appropriate instructions to the jury. Therefore, Riley cannot show that the trial court would have granted a mistrial motion even if defense counsel had made one.

Accordingly, we hold that Riley's ineffective assistance of counsel claim fails.

14

C.     CUMULATIVE ERROR

Riley argues that the cumulative effect of multiple errors denied him a fair trial.  We

disagree.

Under the cumulative error doctrine, we may reverse if the defendant shows that the

combined effect of multiple errors requires a new trial.  *State v. Clark*, 187 Wn.2d 641, 649, 389

P.3d 462 (2017).  The cumulative effect of repeated prosecutorial misconduct may be so flagrant

that no instruction can erase the combined prejudicial effect.  *In re Pers. Restraint of Glasmann*,

175 Wn.2d 696, 707, 286 P.3d 673 (2012).

Here, two of the prosecutor's comments were improper.  But based on our discussion

above, we conclude that the cumulative effect of these two improper statements does not warrant

a new trial.

D.     COMMUNITY CUSTODY CONDITIONS

Riley challenges four of the community conditions the trial court imposed in his

judgment and sentence: (1) condition 4, prohibiting contact with minors including his minor son;

(2) condition 11, requiring the sex offender therapist to submit quarterly reports to the

Department of Corrections (DOC); (3) condition 12, requiring him to pay for polygraph testing;

and (4) condition 18, prohibiting the possession of internet capable devices.

1.     Failure to Challenge Conditions in the Trial Court

The State argues that Riley waived his challenge by failing to object at sentencing.

Although a defendant generally must raise an issue in the trial court to preserve it for appeal, we

exercise our discretion to review Riley's challenges.  RAP 2.5(a).

2.    Standard of Review

We review the imposition of court-ordered community custody conditions for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). "A trial court abuses its discretion if it imposes an unconstitutional condition." *Id.* We do not presume that community custody conditions are valid. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

3.    Condition 4 – No Contact with Minors

Condition 4 in Appendix A states that Riley "shall not have any contact with minors without prior approval of DOC and [his] sexual deviancy treatment provider." CP at 147. Riley argues that this condition should be stricken or modified because it violates his constitutional right to parent his minor son.

A parent's care, custody, and companionship of their children is a fundamental constitutional right. *State v. DeLeon*, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020). "More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Sentencing conditions that interfere with parenting rights must be " 'reasonably necessary to accomplish the essential needs of the State and public order.' " *DeLeon*, 11 Wn. App. 2d at 840-41 (quoting *Warren*, 165 Wn.2d at 32). In addition, "[s]uch conditions 'must be narrowly drawn,' and '[t]here must be no reasonable alternative way to achieve the State's interest.' " *DeLeon*, 11 Wn. App. 2d at 841 (quoting *Warren*, 165 Wn.2d at 34-35).

A trial court can impose a condition restricting a defendant's access to his or her own children only if the condition is "reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010).

"[T]he interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010). The trial court must conduct this inquiry on the record. *DeLeon*, 11 Wn. App. 2d at 841. The trial court must expressly "(a) consider the constitutional right to parent, (b) explain why the no-contact provision is necessary, and (c) explore whether any viable less restrictive alternatives exist." *State v. Reedy*, 26 Wn. App. 2d 379, 392, 527 P.3d 156 (2023). Remand is required if the trial court does not address the defendant's constitutional right to parent before prohibiting all contact with their children. *DeLeon*, 11 Wn. App. 2d at 841-42.

Here, the trial court did not address Riley's constitutional right to parent on the record, likely because Riley did not object to the condition. Therefore, on remand the trial court must conduct the necessary constitutional analysis and determine if there are less restrictive alternatives.

> 4. Condition 11 – Treatment Provider Reporting to DOC

Condition 11 in Appendix A states, "[t]he sex offender therapist shall submit quarterly reports on [Riley's] progress in treatment to DOC." CP at 148. Riley argues that this condition is overbroad because it allows the trial court to sanction him if his therapist fails to submit the required report. The State argues that this provision merely describes administrative reporting and does not impose an affirmative obligation on Riley.

Here, the reporting condition does not clearly distinguish between obligations imposed on the treatment provider and obligations imposed on Riley. As written, the condition can be read to make Riley responsible for ensuring the treatment provider's compliance. Riley cannot control whether a third-party treatment provider timely submits reports to DOC or what those reports

contain. Without clarification, the condition creates an unacceptable risk of arbitrary enforcement because DOC could consider a treatment provider's noncompliance as a violation by Riley.

Accordingly, we remand for the trial court to amend this condition to make clear that Riley's obligations are limited to participating in treatment and signing necessary releases.

5. Condition 12 – Polygraph at Defendant's Expense

Riley argues, and the State concedes, that condition 12 in Appendix A requiring polygraph testing at his own cost should be stricken because the trial court found Riley to be indigent. We accept the State's concession and remand to the trial court to strike Condition 12.

6. Condition 18 – Internet-Capable Devices

Condition 18 in Appendix A provides that Riley shall not

possess any electronic device capable of viewing images on the internet, downloading images from the internet, browsing internet websites, or accessing social media websites without prior approval of DOC and [his] sexual deviancy treatment provider. [And he] shall not access any internet website without prior approval of DOC and [his] sexual deviancy treatment provider.

CP at 148. Riley argues that this condition must be stricken because it is not crime-related and is unconstitutionally overbroad.

The State argues that the conditions should be amended rather than stricken. The State relies on *State v. Geyer*, where the court held that requiring preapproval for every action on a computer or the internet is unnecessarily broad, and that use of a filter tailored to the defendant's risk can accomplish the State's goals in a narrower manner. 19 Wn. App. 2d 321, 330, 496 P.3d 322 (2021). We agree that the condition as written is overly broad.

Internet restrictions requiring offenders to access the internet only through filters approved by an offender's CCO have been found not to be overbroad. *State v. Johnson*, 197

Wn.2d 740, 742, 487 P.3d 893 (2021). In *Johnson*, the Supreme Court upheld a community custody condition prohibiting the defendant from using or accessing the internet "unless specifically authorized by [his CCO] through approved filters." *Id.* at 744-47.

Unlike in *Johnson*, the condition imposed on Riley does not clarify when approval is required or whether approval may be granted generally, and the condition risks restricting constitutionally permissible use of electronic devices and internet access.

Accordingly, we remand for the trial court to amend the condition so it does not exclude constitutionally permissible use.

CONCLUSION

We affirm Riley's convictions, but we remand for trial court to address the challenged community custody conditions consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
GLASGOW, J.